## ELLIOT B. TROW *vs.* SCOTTO BERRY.

A master's report upon questions of fact will not be set aside or modified without clear proof of error.

A master to whom was referred a bill to redeem land from a mortgage found that the plaintiff, being the owner of the land subject to a mortgage, had again mortgaged it by giving an absolute deed, to secure a new loan and any sum which the grantee might pay in purchasing an assignment of the first mortgage, and by taking a bond of defeasance with the condition that the grantee should reconvey upon being repaid within three years; that the mortgagee, having purchased the first mortgage, had received from the mortgagor a certificate of peaceable possession; that at the expiration of three years, the land not having been redeemed, a new bond had been substituted for the first bond, and, by successive renewals, had been extended for many years; that the mortgagor had regularly for many years paid interest which was received as such, the mortgagor in the mean time occupying the premises and paying the taxes. *Held,* that upon these facts the master was justified in finding that the mortgages had not been foreclosed.

BILL IN EQUITY filed August 17, 1871, to redeem land from a mortgage. The bill alleged that the plaintiff, February 14, 1837, was seised and possessed of a certain farm; that on that day, being indebted to Scotto Berry, Sen., in the sum of $1500, he made an absolute deed of the premises to him, for the purpose of securing the payment of the debt; that at the same time Berry gave him a bond of defeasance conditioned to reconvey the premises upon the payment of the debt and interest; that at that time the premises were subject to a mortgage to one Samuel Mixter to secure the payment of $2566.66 with interest, which mortgage was, March 20, 1837, assigned to Berry; that on that day the plaintiff gave Berry possession of the premises under this mortgage for the purpose of foreclosing it, and a certificate of such possession was indorsed upon the mortgage and duly recorded; that before the expiration of three years the possession was abandoned by Berry by agreement and mutual consent; that if the foreclosure of said mortgage had become complete, the foreclosure was afterwards opened by agreement; that the mortgages and the debts secured thereby had been considered and treated by the parties as open and subsisting mortgages and debts; that in November, 1864, Berry, Sen., died; that the defendant was his son and sole heir and the residuary legatee under his will; that the mortgages and mortgage debts passed to the defendant; that from February 14, 1837, the plaintiff had been in possession of the premises with the consent of Berry, Sen., in his lifetime, and, since his decease, of the defendant, and had paid the interest on the debt and the taxes on the land; that he had expended large sums of money in making permanent improvements thereon; that he had been assured repeatedly by Berry, Sen., and by the defendant, that the debt might remain unpaid, and that his rights should not be prejudiced thereby, and that he might pay the debt and have the estate reconveyed to him whenever he desired and requested; that the deed to Berry, Sen., was recorded, but that the bond of defeasance was not recorded that by the records the absolute title to the premises appeared to be in the defendant; that the bond was in the defendant's possession; that January 9, 1868, the defendant made a mortgage of

the premises to the Worcester Mutual Fire Insurance Company to secure the payment of $5000 ; that the insurance company held and insisted upon the mortgage against the plaintiff; that the estate was of the value of $12,000, and that the amount of the debt due the defendant did not exceed $4700.

The defendant in his answer alleged that the bond of defeasance had been delivered up and cancelled, and for more than twenty years had ceased to be a valid subsisting obligation.

The case was referred to a master to hear the parties, state the facts, and make report thereof to the court.

The master found that the dealings of the plaintiff and Scotto Berry, Sen., were as follows :

February 14, 1837, the plaintiff was the owner of the premises. They were then subject to a mortgage to Samuel Mixter, dated April 3, 1829, given to secure a promissory note for $2566.66. This mortgage was assigned October 22, 1835, by Samuel Mixter to Israel C. Trow, who was the owner of it February 14, 1837. On that day Scotto Berry, Sen., loaned the plaintiff $1500 and assumed the mortgage debt, and as security for the repayment of the $1500 and whatever he should pay on the Mixter mortgage took from the plaintiff a deed of the real estate, and at the same time and as a part of the same transaction gave to the plaintiff a bond of defeasance. The deed was duly recorded February 20, 1837, but the bond was never recorded. March 20, 1837, the mortgage held by Israel C. Trow was duly assigned by him to Scotto Berry, Sen., and this assignment was recorded March 21, 1837. On the same day the plaintiff gave Berry peaceable possession to foreclose the mortgage, and a certificate thereof was duly recorded.

The plaintiff paid Berry on each February 14 for twelve successive years from 1838 to 1849, the sum of $90 as interest on the bond and on a substitute therefor to be hereafter mentioned. The plaintiff also paid Berry April 3, 1837, $66.66 on the Mixter mortgage note, reducing the principal to $2500, and paid the interest on the same to that time, and thereafter on each March 20, for twelve successive years from 1838 to 1849, he paid $150 interest on the note, and indorsements thereof were made from year to year on the back of the note.

The plaintiff made no other payments on the bond or note til. March, 1853.

February 12, 1840, the condition of the bond remaining unfulfilled, the plaintiff gave up to Berry the original bond and took from him another as follows:

" Whereas Elliot B. Trow, of Hardwick, in the county of Worcester, did on the 14th day of February, A. D. 1837, convey to me certain real estate situated in said Hardwick, containing about two hundred and twenty acres and is the same on which the said Trow now lives, for a particular description of which, reference may be had to the deed of conveyance which is recorded in the Registry of Deeds for said county, B. 321, P. 426: Now in consideration that said Trow shall pay to me the sum of four thousand dollars and interest of the same annually (that being the sum paid by me for said farm), within three years from this day, I promise the said Trow that I will reconvey the same estate to him, his heirs or assigns, on receiving payment as above, and to the fulfilment of this promise I bind myself, my heirs, executors and administrators firmly by this instrument. Given under my hand and seal, this 12th day of February, 1840.

" Scotto Berry." [Seal]

This bond was extended by written agreements till March 11, 1852, the date of a lease hereafter mentioned, after which time no further written agreements to extend it were given.

The plaintiff was in the actual possession of the premises from February 14, 1837, to March 11, 1852, and had during that time paid all the taxes assessed thereon. The master found that on the last named date he was the owner of the premises, and that they were subject to the Mixter mortgage, and to the mortgage created by the transaction of February 14, 1837, and that neither of them was then foreclosed, unless there was a foreclosure of the Mixter mortgage on the facts above stated.

The defendant contended, and the plaintiff denied that on said March 11, 1852, there was a new contract entered into between the plaintiff and Berry, Sen., in which the plaintiff abandoned his right to redeem the premises from the two mortgages and it was agreed that the plaintiff should occupy the said premises

while he lived, as long as he paid yearly an amount equal to the interest at six per cent. of $4700 (the amount of the debt and interest due at that time), and taxes, and that whenever the plaintiff should make enough off of the farm to pay and should pay to Berry $4700, he should have a deed of the premises.

The master reported that the evidence failed to satisfy him that such a contract was then made, or that the relations of the parties as mortgagor and mortgagee were changed by the transactions of that date or at any time prior to the filing of the bill, but, at the request of the defendant, stated the facts relative thereto substantially as follows :

March 11, 1852, nearly three years' interest was due on the bond and mortgage note, and the plaintiff was unable to pay it. He had never up to that time been able to pay any part of the principal, and the interest had accumulated so that the whole indebtedness was $4700. The mortgagee was then pressing the plaintiff for the payment of the interest. The plaintiff was sick, and, at his request, a lease of the farm was made to Elliot B. Trow, Jun., a son of the plaintiff. The lessee refused to take a lease of the plaintiff on the ground that, as he supposed, the legal title was in Berry. The lease was for the term of three years from March 20, 1852, and the rent reserved was $282 per annum (an amount equal to the interest of $4700 at six per cent.), and all taxes levied on the premises. At the same time the plaintiff leased to his son all his stock, farming tools, and household furniture for the same term, in consideration that the lessee should support the lessor and his family during the term, and pay him a small sum of money monthly. The son during the term occupied the premises under his lease and paid the rent reserved, which was indorsed on the back of the lease by the lessor. The plaintiff during the time lived with his son. When the lease expired, the son ceased to carry on the farm, and soon after went West. The plaintiff, without any express agreement with Berry, carried on the farm again and continued so to carry it on till the decease of Berry, in November, 1864, paying the rent as his son had done, and these payments were also in dorsed by Berry upon the lease. The lease, from its date to

the decease of Berry, was in Berry's possession, and the at-
tention of the plaintiff was not called to the form of the in-
dorsements, and he did not know that the payments were in-
dorsed on the lease as rent, and not as interest.    The plaintiff
knew that prior to March 11, 1852, all payments made by him
were indorsed separately on the note secured by the Mixter
mortgage, and on the bond, and that all payments made by him
after that time were indorsed in one sum on some paper which
he supposed was the bond.    He also knew that prior to March
11, 1852, the amount of his annual payment was $240, and that
subsequently it amounted to $282.

The plan adopted by the parties to secure the original debt by
an absolute deed, with a bond to reconvey, was adopted to avoid
double taxation, and the legal title to the real estate was always
treated and supposed by the parties to be in Berry from the form
of the transaction.    After the bond had run out by limitation of
time, both parties supposed that Berry was bound in honor, but
not in law, to reconvey the property to the plaintiff upon pay-
ment of the indebtedness.    During the lifetime of Berry, and
up to the time of his decease, he repeatedly recognized the fact
that as between the plaintiff and himself the real relation was
that of debtor and creditor, but claimed that his obligation to
reconvey the estate was one of honor, which he always meant to
hold binding himself, and which he directed his son, the defend-
ant, to hold sacred after his decease.    At the same time, taking
advantage of what he supposed to be his legal title to the farm,
he refused to let a third party hold the debt and to give up his
title to any one except the plaintiff.

The bond of February 12, 1840, was retained by the plaintiff
in his possession till 1856 or 1857, when it was given up to Berry,
Sen., to be exhibited to the assessors of taxes, but it was never
given up to be cancelled.    All the papers relating to the trans-
actions between the plaintiff and Berry, Sen., including the deed,
the bond of February 14, 1837, the Mixter mortgage and note,
the bond of February 12, 1840, the several agreements for the
extension of the bond of February 12, 1840, and the lease from
Berry to E. B. Trow, Jun., were found in the possession of Berry

at the time of his decease, and remained in the custody of the defendant till they were produced at the trial.

April 1, 1852, Berry, Sen., executed and delivered to Hosea W. Nye a lease of a small piece of land, being a part of the land described in the deed to him.

Between January 1 and April 1, 1853, Berry, Sen., proposed to give the plaintiff a clear deed of another farm belonging to him, situated in Barre, called the Atwood farm, valued at about $3800, if he would give up his possession and all claim to the demanded premises to him, but the plaintiff declined his offer.

The demanded premises were always worth much more, and are now worth nearly double the amount advanced by Berry, and the unpaid interest thereon.

The land was taxed to Berry in 1837 and from 1842 to 1849, and also from 1851 to 1864, and from 1865 to 1872, to the estate of Berry. In the remaining years since 1837 it was taxed to the plaintiff, and he had always paid the taxes since 1837.

The master, at the request of the defendant, reported much testimony, tending to show the relations of the plaintiff and Berry, Sen., after the date of the lease of March 11, 1852; but also stated that there was other testimony upon the same point which he was not requested to report, and that his findings were based on all the testimony.

The defendant excepted to the master's report:

" For that the said master hath in and by his report certified that he finds that on the eleventh day of March, 1852, the plaintiff was the owner of said premises, and that said real estate was subject to the Mixter mortgage, and to the mortgage created by the transaction of February 14, 1837, and that neither of said mortgages was then foreclosed.

" Whereas he ought to have certified that the relation of mortgagor and mortgagee as between plaintiff and defendant's ancestor, created by the transactions of February 14, 1837, was terminated upon the surrender of the bond of that date, and that the new bond of February 12, 1840, was a new and independent contract to purchase the land upon new conditions, and that the Mixter mortgage had been foreclosed.

" For that the said master hath in and by his said report certified that he finds that the bond of February 12, 1840, was never given up to be cancelled.

" Whereas said master ought to have found that the same, after March 11, 1852, was never treated as a subsisting outstanding obligation, or understood to be such by the parties.

" For that the said master hath in and by his said report certified that he finds that the evidence failed to satisfy him that the new contract claimed by defendant to have been made March 11, 1852, was then made, or that the relations of the parties as mortgagor and mortgagee were changed by the transactions of that date, or at any time prior to the filing of plaintiff's bill.

" Whereas said master ought to have found that the relations of the parties as mortgagor and mortgagee were changed prior to the filing of the bill."

The case was reserved by *Wells,* J., for the consideration and decision of the full court upon the pleadings, master's report and the defendant's exceptions.

*T. L. Nelson & A. J. Bartholomew,* for the plaintiff.

*G. F. Verry,* for the defendant.

MORTON, J. This case was referred to a master, " to hear the parties and state the facts and make report thereof to the court ; " and it now comes before us upon exceptions to the master's report. It is the well settled practice that the report of a master upon questions of fact referred to him has substantially the weight of the verdict of a jury, and his conclusions are not to be set aside or modified without clear proof of error or mistake on his part. *Dean* v. *Emerson,* 102 Mass. 480.

The first exception to the master's report is to his finding that on March 11, 1852, the plaintiff was the owner of the premises subject to the Mixter mortgage and to the mortgage created by the transaction of February 14, 1837, and that neither of said mortgages was then foreclosed. The defendant does not deny that the deed of February 14, 1837, and the bond of defeasance of the same date, being parts of the same transaction, constituted a mortgage. This mortgage covered both the $1500 loaned by the mortgagee at that time, and whatever amount he might after-

wards pay upon the Mixter mortgage. But when Berry paid the Mixter mortgage, it was assigned to him, and the plaintiff gave him a certificate of peaceable possession for the purpose of fore-closure. The parties thus elected to keep the Mixter mortgage alive, and there were two mortgages upon the estate. The ques-tion whether either of those mortgages was foreclosed was en-tirely a question of fact depending upon the agreements of the parties. The mortgagee would acquire an absolute title to the estate under the Mixter mortgage, after the lapse of three years from the time of his entry to foreclose, unless he waived or opened the foreclosure. But it was competent for him to open it by an agreement to that effect. And the evidence reported by the master clearly justified him in finding as a fact, that there was an agreement between the parties that the estate should be held by Berry merely as security for an existing debt. He re-ceived for many years the interest on the Mixter note and on the bond, indorsing such payments, as interest, on the note and bond respectively; he extended the bond from time to time; the plain-tiff occupied the estate all the time, paying all the taxes assessed thereon. This and the other evidence in the case tended strongly to show that the real relation between the parties was that of debtor and creditor, mortgagor and mortgagee; and cannot be explained consistently with the right of the mortgagee to hold the estate under the foreclosure. *Lawrence* v. *Fletcher*, 8 Met. 153. *Harrison* v. *Phillips Academy*, 12 Mass. 456. *Newhall* v. *Burt*, 7 Pick. 157. *Murphy* v. *Calley*, 1 Allen, 107. *Joslin* v. *Wyman*, 9 Gray, 63.

The ground taken by the defendant that, by the taking of the first bond and by giving a new bond on February 12, 1840, the title became absolute in Berry, cannot be sustained. If the parties intended to put an end to the old relation of debtor and creditor, and the new bond was an independent transaction, it might have that effect. But if the new bond was merely a re-newal or extension of the old one, representing the same debt, the transaction would not operate as a foreclosure of the mort-gage. The master nas found the latter to be the nature of the transaction, and we think the evidence justifies this finding. *Mc-*

*Intier* v. *Shaw,* 6 Allen, 83. *Falis* v. *Conway Insurance Co.* 7 Allen, 46. *Trull* v. *Skinner,* 17 Pick. 213.

The defendant's second exception is to the finding of the master that the bond of February 12, 1840, was never given up to be cancelled. It appeared that this bond was given to Berry in 1856 or 1857, but the master finds that it was given to him to be exhibited to the assessors of taxes, but was never given up to be cancelled. This is purely a question of fact, depending not only upon inferences to be drawn from the acts of Berry, but upon the credit to be given to the plaintiff and other witnesses examined orally before the master. Nothing appears in the report of the master to show that his conclusions upon it were erroneous.

The defendant claimed at the hearing that on March 11, 1852, there was a new contract entered into between the plaintiff and Scotto Berry, Sen., by which the plaintiff abandoned his right to redeem the two mortgages; and his third and last exception is to the finding of the master that such new contract was not proved, but that the relation of mortgagor and mortgagee continued until the plaintiff filed his bill. This claim presented a question of fact for the master's decision, and we must regard his finding upon it as conclusive, inasmuch as all the evidence upon which it is based is not reported to us. There is nothing in the report to show that it was erroneous. The giving of the lease to a son of the plaintiff, the indorsement of the annual payments made by the plaintiff as rent instead of as interest, and the fact that the parties did not understand the legal effect of their acts, were evidence tending to support the defendant's claim, but they were not conclusive, and it was for the master to decide whether they were overbalanced by the other evidence in the case, and whether upon the whole it was fairly proved that the real relation between the parties, recognized and understood by both, was that of debtor and creditor. We are of opinion that the defendant has not shown that any of the findings were erroneous, and that upon the facts found the plaintiff is entitled to redeem.　　　　　　*Decree for the plaintiff.*