JAMES W. NEWELL *vs.* PAUL WEST.

PAUL WEST *vs.* JAMES W. NEWELL.

Norfolk. March 27, 1889. — June 25, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Estate of Deceased Person — Widow's Allowance — Administrator — Accounting — Equity Practice and Pleading — Master — Attorney's Lien — Set-off — Alabama Claim — Probate Court.*

The question whether an allowance to a widow from her husband's estate was properly made by the Probate Court is not open upon a hearing on the administrator's account.

The findings of a master to whom a probate appeal is referred cannot be set aside without definite proof of error, but must be treated as having substantially the weight of the verdict of a jury.

An administrator was allowed by a master, to whom a probate appeal as to his account was referred, the amount of an allowance to the intestate's widow retained by him under an agreement with her in return for valuable services rendered to her by him; the rent of an office, necessarily hired by him for the exclusive use of the estate owing to the large mass of books and papers belonging to it; payments made by him for services performed for him as administrator in the prosecution of claims belonging to the estate; for his services and commissions as administrator; and for services rendered by him to the intestate before his death. *Held*, that the items were properly allowed.

An agreement between an attorney at law and his client for the payment of a certain sum for the former's professional services in prosecuting Alabama claims of the client, recited that the sum agreed upon "should in some form be charged upon or paid out of any sums to be recovered on the Alabama claims." *Held*, that there was no effective assignment to the attorney of any right in those claims, and that, even if there were, § 3477 of the U. S. Rev. Sts. would be a bar.

An administrator, who, as such, receives the amount of an award of the Court of Commissioners of Alabama Claims upon a claim in favor of his intestate, cannot assert a lien thereon for services rendered by him as an attorney at law to the intestate prior to his death in the prosecution of the claim; nor, if the estate be insolvent, can he set off his claim for such services against such amount.

Money paid by the United States out of the Geneva Award upon an Alabama claim created by the U. S. St. of June 5, 1882, is in the nature of a gratuity, and does not pass to an assignee in bankruptcy appointed under proceedings instituted prior to the passage of that act.

An administrator who has resigned his trust is not to apply to commissioners in insolvency appointed under the Pub. Sts. c. 137, § 2, to prove a debt due him personally from the estate, when its amount may depend entirely upon the relation in which he stands to the estate, but must present his claim to the Probate Court under the Pub. Sts. c. 136, § 6.

The date of a decree of the Probate Court as recited therein cannot be controlled by other evidence upon an appeal from the decree; but the party aggrieved should apply to that court to correct the mistake or error, if any.

DEVENS, J. These are appeals from a decree of the Probate Court for Norfolk County, upon the account of Paul West, administrator of Isaac Taylor. The first case is the appeal of Newell, the administrator *de bonis non* of Taylor, appointed after West had resigned as administrator, because certain items had been allowed said West by the Probate Court. The second case is the appeal of Paul West, administrator, because the Probate Court had disallowed certain claims made in his account as administrator of Taylor. These appeals have been heard by a justice of this court upon the report of the master to whom they were referred, and upon the exceptions of the parties thereto, and the master's report has been confirmed. No evidence was offered before the master, in either case, except that which was pertinent to and which bore upon the reasons of appeal as filed in the Probate Court. These reasons may be considered substantially in their order, commencing with those of Newell.

The first reason of appeal presented is, that West should not have been allowed the sum of $1,500, the allowance made to the widow of the intestate, because the same was never actually paid to her by West. It is found that the widow had agreed that this sum should be retained in return for valuable services rendered her by West upon her own account; that she had made no claim for it upon Newell, the present administrator; and that the agreement made by her with West was a reasonable and proper one. It was correctly ruled by the master, that the question whether the allowance to the widow should have been made by the Probate Court was not open in a hearing upon the administrator's account, and that upon the above facts West was entitled to this allowance.

The second reason of appeal is, that West should not have been allowed and credited with the sum of $472.50 for the rent of an office hired by him exclusively for the business of the estate; but as it appears by the report that the hiring of said office was reasonable and practically necessary in view of the large mass of books and papers belonging to the estate, this allowance was properly made.

The third reason of appeal is on account of the allowance to West of certain payments made by him for services performed for him as administrator in the prosecution of Alabama claims,

so called, belonging to the estate. They are found to be reasonable and valuable, and that it was requisite to obtain them in order that these claims should be properly pressed. They were therefore properly allowed.

The fourth reason of appeal is from an allowance by the Probate Court of the sum of $3,346.91 to West for the services and commissions of West as administrator, upon the ground that the amount was excessive, and that he was unfaithful in his trust. While the evidence is not reported, much was offered before the master as to the extent and value of West's services. It appeared that the affairs of Taylor at the time of his death were widely extended and in a very confused state, that very important services were rendered by West, especially in the prosecution of the Alabama claims, and that he was not unfaithful in the performance of his trust. Upon the evidence, the master has found as a fact that the services of West as administrator were of the value of $4,000, the sum originally claimed by him. This finding, as well as those which we have previously considered, is not shown in any way to be erroneous, nor can it be set aside as such without definite proof of error, but must be treated as having substantially the weight of the verdict of a jury. *Trow* v. *Berry*, 113 Mass. 139. *Richards* v. *Todd*, 127 Mass. 167, 172.

The fifth reason of appeal, by Newell, was waived, and need not be considered.

The sixth reason of appeal, by Newell, is on account of an allowance to West by the Probate Court of $6,240.16, not as a credit upon his account, but as a debt due from the estate to him for services rendered to Taylor before his death, which allowance is to be added to the list of debts proved before the commissioners of insolvency appointed to pass upon claims against the estate, which had been represented insolvent. Upon this item the master allows a larger sum, to wit, $16,000.

An item for services rendered by West to Taylor previous to his death, to the amount of $25,000, was inserted by West at or near the close of the hearing before the Probate Court, but each party had full opportunity to offer evidence in relation to it. It may be conveniently considered in connection with the first and fourth reasons of appeal, as alleged by West; one being that he

was wrongfully charged with an amount of $13,338.71, with interest thereon, received by him as one of the Alabama claims, for a vessel of Taylor destroyed by exculpated Confederate cruisers, so called, which amount West claimed to hold as of right as his own; the other being for the failure of the Probate Court to allow him the sum of $12,480.31 as a lien or claim on the money received from the Alabama claims upon an alleged express agreement that the sum of $15,000 should be paid to him from this fund. It appears that West rendered valuable services for several years previous to Taylor's death in the prosecution of the Alabama claims, and that an agreement in writing was made by which the sum of $15,000 was fixed on as the value of West's services, and "that that sum should in some form be charged upon or paid out of any sums to be recovered on the Alabama claims." But there was no evidence of the manner "in which said agreement provided that said West should obtain his pay from said claims," if it did thus provide, "whether by an assignment of the claims, or by Taylor's agreeing to set aside and hold $15,000 out of said claims for the payment of West, or by declaring that said West should have a lien upon said claims to the amount of $15,000." West contended that, the sum of $13,338.71 of the proceeds of the Alabama claims coming into his hands as administrator, he had a right to appropriate the same to the payment of his claim for $15,000, and also that he had a lien upon the amount received for his professional services.

It was held by the master, that, in view of § 3477 of the Revised Statutes of the United States, West could not "maintain his said claim under the said agreement with Taylor to appropriate said $13,338.71 to his own use, without deciding whether said claim could be maintained were it not for such provisions of the statutes of the United States, and also that he could not maintain his claim upon the second ground, of claim for a lien for his professional services." It was held by the justice of this court who rendered the decree appealed from, that "the evidence and findings contained in the master's report do not show that there was any such distinct assignment to said West of a part of the moneys to be received from the Alabama claims as would convey to said West the title thereto, independently of

the question whether an assignment of such moneys would not be void under § 3477 of the Revised Statutes of the United States, neither do the evidence and findings show that said West had a lien thereon."

Without at this moment discussing the construction placed by the master on § 3477 of the Revised Statutes of the United States, it appears clear that there was no effective agreement by which any assignment or transfer was made to West of any right in the Alabama claims. An agreement by one that he will pay another when he shall himself collect a particular debt, is not an assignment of any interest therein. One form in which it is stated that the alleged contract may have been made by which West was invested with a right to appropriate the fund is, that Taylor agreed that he would hold it and pay West therefrom. Independently of the statutes of the United States, such an agreement would not authorize a payment to West of any portion of the debt due to Taylor, so as to discharge the debtor. Such a case is quite distinguishable from *Pinch* v. *Anthony*, 8 Allen, 536, relied on by West, where it was expressly agreed, not merely that a party advancing money on lands should have an interest in the proceeds thereof when sold, but that the amount due should be " a charge on the joint estate of the parties, in proportion to their respective interests."

That there was no definite agreement that any part of the sum recovered on account of the Alabama claims was to be transferred to West, but that there was at most only an indefinite expectation that he would be paid from the proceeds when Taylor should realize the Alabama claims, appears strongly from West's own conduct. He never personally received the fund as the attorney of Taylor, so that he could assert any individual rights therein; he received it as the representative of the estate of Taylor, and as due to that estate, as appears by his acknowledgment of the date of November 3, 1884, which recited that he received $13,338.71, " in full settlement of the amount due the estate of Isaac Taylor, as the estate's proportion by agreement of the judgment of the Court of Commissioners of Alabama Claims," and as the representative of that estate he must account for it. He had previously inventoried the Alabama claims as a part of Taylor's estate. He had

signed and sworn, as administrator, to the petition to the Court of Commissioners of Alabama Claims for the collection of the claim from which the $13,338.71 was received, representing it to be a part of Taylor's estate, alleging that there had been "no assignment or transfer of the whole or any part of said claims to any person or corporation whatsoever. He had also, as administrator, expended the funds of the estate in its collection, and in a deposition made in aid of the prosecution of the claim had testified that there had been no assignment or transfer, in whole or in part, of this claim.

We are of opinion, also, that the master correctly ruled, that if a transfer of the claim, or part of it, or of a right therein, had been proved, § 3477 of the Revised Statutes of the United States would operate as a bar to the claim of West. It declares " all transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, . . . shall be absolutely null and void," unless the same shall be freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim and the ascertainment of the amount due.

In *Spofford* v. *Kirk*, 97 U. S. 484, the language of this section was considered. "It would seem to be impossible," says Mr. Justice Strong, in delivering the opinion of the court, "to use language more comprehensive than this. It embraces alike legal and equitable assignments. It includes powers of attorney, orders, or other authorities for receiving payment of any such claim, or any part or share thereof. It strikes at every derivative interest, in whatever form acquired, and incapacitates every claimant upon the government from creating an interest in the claim in any other than himself." In *United States* v. *Gillis*, 95 U. S. 407, the court had held that under this statute the assignee of a claim had no standing to prosecute it in any court, or at the Treasury Department, against the government, but was not then called upon to decide whether such assignments were invalid as between the assignor and assignee. In *Spofford* v. *Kirk*, *ubi supra*, it was held that this section was intended to render all claims against the government inalienable, alike in law and equity, for every purpose and between all parties, and that it could not be said, when the statute declares all transfers or

assignments of the whole of a claim, or any part or interest therein, " shall be absolutely null and void, that they are only partially null and void, that they are valid and effective as between the parties thereto, and only invalid when set up against the government."

Nor, irrespective of any agreement with Taylor, can West assert any attorney's lien on the sum collected for his services, which is the ground of his claim to $12,480.31 of the money paid to him. If, before the death of Taylor, West had received moneys belonging to him, which, in the ordinary course of business, should be paid over to Taylor, his claim for services might be set off against the claim of Taylor. But it would be extraordinary if a creditor of a deceased insolvent debtor, by becoming administrator of his estate, can set off his claim against the assets of the estate which he collects as administrator, and thus obtain full payment of his own debt due from the insolvent debtor, while other creditors obtain their debts only in part, and that part diminished by his preference. West received the amount of the award made on Taylor's claim, not as his solicitor or attorney, but as his administrator, and in that strictly fiduciary capacity. In that capacity, he must account for it; he can assert no claim by virtue of the possession thus acquired to any personal benefit therefrom, to the exclusion of other creditors.

It was also contended by West, that by reason of certain proceedings in bankruptcy by Taylor, instituted on December 3, 1875, he should not be required to account for the sum received by him on account of the Alabama claims as administrator. It appeared that on March 25, 1876, a warrant had been issued to take possession of Taylor's property as that of a bankrupt, and that an assignee had been chosen, who did not accept the trust; but it was not shown that any assignment in bankruptcy had ever been made. From that time, so far as appeared, the whole proceedings had slumbered, and had been practically abandoned. No claim had ever been made on West by any assignee of Taylor in bankruptcy; he had prosecuted the claim as administrator, and the sum had been awarded; and he had received the same as such, no suggestion having been made in the prosecution of the claims of any right in any assignee of Taylor. Although the record does not show a formal closing of the bankruptcy pro-

ceedings, West, who has asserted his right to these claims as administrator, who has received their proceeds as such, and who has never been interfered with by any demand for them, or in his full possession thereof, cannot now assign these proceedings as a reason why he should not account for them. Again, the act of Congress of June 5, 1882, created the only claim which Taylor had upon the fund arising from the Geneva Award. His claim was for damages sustained by what were termed exculpated Confederate cruisers, for the destruction of property by them, and also for war premiums. It was the amount awarded for the former class of these claims which was received by West. These claims have been held to be in the nature of gratuities. No assignee could have acquired any interest in them prior to the act, and even if an assignment had been made in 1876 they would not have passed to the assignee. *Heard* v. *Sturgis*, 146 Mass. 545.

If West was in error in declining to account for the sum of $13,338.71, or in asserting a lien on such sum, he asked in the alternative for an allowance for his services rendered to the intestate previously to his death, in the sum of $25,000. An allowance of the sum of $6,240.15 was made him by the Probate Court on this demand, to be added to the list of debts proved against the insolvent estate, so that he would thus be entitled to the same dividend thereon as the other creditors. Newell makes the objection, that, as West had ceased to be administrator before he filed his account and before his claim for a debt due from Taylor's estate was presented to the judge of probate, and as such claim must be presented to the commissioners in insolvency on Taylor's estate, the judge had no jurisdiction thereof in the settlement of West's account. At the time of the presentation of West's account, the commission in insolvency was still open, by reason that appeals had been taken from the allowance of certain debts by the commission, and the appeals were still pending. The master heard the evidence, and having found that there was an agreement between Taylor and West, at a particular time before Taylor's death, that West should be paid $15,000 for his services up to that time, and that such agreement was a fair and reasonable one, and, further, that subsequently to this time West rendered services to Taylor of the

value of $1,000, found that the sum of $16,000 was due as a debt to West, to be added to the list of debts as proved before the commissioners of insolvency, so that he should receive the same dividend thereon as other creditors, when one should be declared.

If this was a matter properly within the jurisdiction of the Probate Court, and thus properly before the master, we can see no objection to this finding upon the facts as they are stated, the evidence not being fully reported. It is the contention of Newell, that the Probate Court had no jurisdiction, and thus that this court has none over West's claim for services rendered before the death of the intestate, for the reason that when he presented it he had ceased to be administrator. When an estate of a deceased person is represented insolvent, commissioners are appointed by the Probate Court to examine the claims of creditors, or, if commissioners are not appointed, the court may itself examine the claims, and cause a list of the same, as allowed or disallowed, to be prepared. Pub. Sts. c. 137, §§ 2–4. The Pub. Sts. c. 136, § 6, provide that, if a debt is claimed by an executor or administrator as due to him from the deceased, he shall file in the court a statement of his claim in writing, which may be submitted to arbitrators as therein provided for. If arbitrators are not agreed upon, the judge may himself pass upon the claim. Pub. Sts. c. 136, § 7. *Willey* v. *Thompson*, 9 Met. 329. It is contended that this applies only to the claim of an executor or administrator who is such when he seeks to prove his claim.

Notwithstanding one has been removed, or has resigned from an executorship, it is still necessary that he should account as executor. Under the Pub. Sts. c. 144, § 2, he would still be obliged to submit himself to an examination, and to answer all questions in relation to his accounts. By voluntarily accepting this trust, his relation to the estate has changed. If he is a debtor thereto, his debt is extinguished, and he is to account for the amount of it as executor. If he is a creditor, he is entitled to credit the amount due to him, and receive it out of the assets. If the estate is insolvent, he cannot indeed receive it in full, as it would be obviously inequitable that he should obtain a preference over other creditors. It was held in *Green* v. *Russell*, 132 Mass. 536, that an executor having a claim against the

insolvent estate of his testator must present it to the Probate Court, as provided in the Gen. Sts. c. 97, §§ 26, 27, (Pub. Sts. c. 136, §§ 6, 7,) in order that it might determine the validity of his claim, and not to the commissioners in insolvency appointed under the Gen. Sts. c. 99 (Pub. Sts. c. 137). The principal reason for the decision which is there given, that, the claim being made by the executor, there would be no one to control it, would not indeed apply in the case at bar, as the first administrator is now out of office, and there is an administrator *de bonis non.* But in no place except the Probate Court itself can the true relation of one who is or has been the administrator be determined. The claim of West, and its amount, depended upon the question whether he was entitled to retain the sum collected by him as the Alabama award, or to maintain a lien upon it, or whether he was obliged to account for it as administrator. This could not have been passed upon by the commissioners of insolvency; it could only be determined by the settlement of his account in the Probate Court, where the question of his liability to the estate as administrator would be passed upon.

Where one who has been an executor has resigned his trust, or been removed therefrom, he cannot maintain a suit, either at law or in equity, against the administrator with the will annexed, to recover a debt due him from the estate, but his remedy is in the settlement of his accounts of administration in the Probate Court. *Prentice* v. *Dehon,* 10 Allen, 353. *Munroe* v. *Holmes,* 9 Allen, 244. In a similar manner, where one has resigned as administrator, he is not to apply to the commissioners of insolvency to prove the debt due him from the estate, when its amount may, as in the case at bar, depend entirely upon the relation in which he stands to the estate. He is to settle his accounts, and, as a part of the settlement, to present his own claim for any debt due to him, whether the estate be solvent or insolvent, to the Probate Court, under the Pub. Sts. c. 136, § 6, that it may there be passed upon by it, or to arbitrators appointed by it. It is to be observed, also, that while the commission of insolvency was actually open when West's account was presented, by reason that certain debts allowed by the commissioners had been appealed from, which appeals were still pending, it would oftener happen that such a commission would

be closed and its time have expired at the time when it would become necessary to investigate the personal claims of an administrator who had resigned, or been removed, and that, unless such claim could lawfully be heard in the Probate Court, there would be no tribunal competent to deal with it.

The result therefore is, that the sixth reason of appeal of Newell, as to any allowance to West for services rendered previously to the death of Taylor, is overruled, and that the allowance of $16,000 made by the master was properly made, as a debt to be added to the list of claims as allowed by the commissioners, to receive the same dividend as that allotted to other creditors; that as to the first reason of appeal by West, it was properly held that he should account for the sum of $13,338.71, with interest thereon from the time of its receipt to the date of the final decree, he having wrongfully held it as his own; that as to his fourth reason of appeal, he is not entitled to any lien on the Alabama award as collected.

As to the seventh reason of appeal, by Newell, that West was not charged with interest on a certain sum of $6,500, it is found by the master that there was no evidence to sustain such a charge, and this finding is affirmed.

The second reason of appeal, by West, is that the Probate Court allowed him $3,546.91, instead of $4,000, for his services as administrator, and is disposed of by our affirmation of the decision of the master, considered in connection with Newell's fourth reason of appeal, where it has been held that the sum of $4,000 was a proper charge for West's services as administrator.

The third reason of appeal, by West, is that two payments made by him to one Sweeney and one Wiswall were wrongfully disallowed. These sums were paid to compromise two claims against the estate made by Sweeney and Wiswall respectively, for services in prosecuting the Alabama claims. These demands are found to have been of such a character that they were properly a subject of compromise, and that such compromise was wise in order to avoid litigation as to claims of a doubtful character. Under these circumstances, the payments made by West should properly be allowed.

The fifth reason of appeal, by West, was that $25,000, instead of $6,240.15, should have been allowed him for his services as

attorney rendered Taylor before his death, and was fully considered in connection with the sixth reason of appeal by Newell, where it was determined, upon the finding, that the sum of $16,000 was the proper sum which West should be allowed as a debt on the list of proved claims.

It is contended by West that there is no decree of the Probate Court, and that the case should be remitted to the Probate Court for further hearing. A first decree, which was never recorded, appears to have been made on March 7, 1888; another upon March 14, which was written out and recorded; and soon after a third one, which, as the master finds, is the one appealed from. While the third decree purports to be of March 7, which was the date of the decree as first drawn, it appears, according to the facts recited, not to have been put into its present shape until after March 14. As against the record of the date of the decree, and to control it so that it shall be held inoperative, this cannot be shown. A party aggrieved should apply to the Probate Court for a remedy, if he has sustained any injury thereby, as by an abridgment of the time within which he would be entitled to appeal. The Probate Court has extensive powers in correcting mistakes and defects in its orders and decrees, except when it would be inconsistent with the very object of the decree thus to review it. *Richardson* v. *Hazelton*, 101 Mass. 108. *Pierce* v. *Prescott*, 128 Mass. 140. *Cleveland* v. *Quilty*, 128 Mass. 578. *Bowers* v. *Hammond*, 139 Mass. 360. While the decree as originally drawn was modified in important particulars, all matters embraced in the controversy were heard, and the object of the changes made was that such matters should be fully passed upon, so that either party might be protected in his right to review the decision thereon by appeal.

One error in computation appears, which is not included in the reasons of appeal by Newell, administrator, but which, from its purely clerical character, may be corrected in the decree to be rendered here. It is said to have been called to the attention of the Probate Court and master, and would seem to have been accidentally overlooked. The accountant, West, charges himself, in one item of his schedule A, with the "amount of personal estate according to inventory, $47,780.64." On referring to the inventory as he has returned it, it will be seen that

the accountant has made an error in adding, by which it is $100 less in amount than if correctly added. The accountant should, therefore, charge himself with $47,880.64.

With this modification, and with the appropriate changes in the amounts of interest required by the different dates, the decree, as rendered by the justice of this court, is affirmed, and the cases are remanded to the Probate Court for further proceedings.

*Ordered accordingly.*

*W. H. H. Andrews*, for Newell.
*B. F. Butler*, for West.