Hershfang, J.
Plaintiff claims that defendant, an attorney, wrongfully deducted an $18,807.62 fee for legal services from an account which defendant held as escrow agent. Plaintiff says the trial judge erred in finding for defendant. In the special circumstances of this case, we find no error and dismiss the Report.
The basic facts set forth in the Report are not in dispute. Some time before June, *181 1986, as attorney for plaintiff and as escrow agent, defendant received $22,500. His client, plaintiff here, had entered into a purchase and sale agreement under which he was to convey to one DeGuzman certain Weston real estate. When DeGuzman was not ready to pass papers as agreed, defendant turned over to plaintiff $3,500 from the escrowed funds.[1]
The DeGuzman closing took place in June, 1986. Defendant was not present but sent an attorney from his office. At that time $18,803.62 was the balance due defendant for legal services rendered to the “plaintiff, his wife and a corporation in which plaintiff as involved in relation to the DeGuzman sale and various other matters.” As plaintiffs brief concedes, the fee “had been owed for over ayear;... plaintiff had never expressed dissatisfaction with the services rendered, and ... defendant had previously turned over other funds to the plaintiff on the plaintiffs word that [defendanf s] bill would be paid.” During that period defendant had tried to get paid on that bill and plaintiff said he would pay defendant when he could. Plaintiff also told defendant he saw no reason why the matter of fees could not be resolved once the DeGuzman closing took place. Plaintiff discussed the escrow with the attorney who attended the closing on the defendant’s behalf. That attorney described plaintiff as being upset about it, apparently because plaintiff was then told of defendant’s plan to withhold his fee from the proceeds.[2] Plaintiff asked that defendant call him.
OnJune23,1986 (apparently soon aftertheclosing)defendantsentplaintiffacheck for $1,190.38, explaining that it was “the balance due after payment of all legal fees.” Defendant also wrote plaintiff to “please feel free to contact [defendant] ” if plaintiff had “any questions.” The $1,190.38 represented the original $22,500 escrow sum, plus interest, less the $3,500 earlier turned over, and less the $18,803.62 balance due for legal services.
Plaintiff had not explicitly authorized the deduction for legal fees but remained silent about the deduction after receiving defendant’s letter of June 23,1986 and the enclosed check. More than thirty-two months later plaintiff’s new attorney sent a demand letter under G.L.c. 93A in which “a reasonable offer of settlement” was requested.[3]
In this suit plaintiff seeks to recover the withheld $18,803.62, claiming that its deduction from the escrowed funds was without authority. Plaintiff’s claim is grounded in counts alleging breach of contract, negligence and violation of G.L.c. 93A, and G.L. c. 221, §51. Defendant denied that the fee was deducted without authority and counterclaimed “alleging a conversion and misrepresentation in connection with delay in payment of a legal fee.”[4]
Plaintiff’s claim under the contract, negligence and G.L.c. 93A counts is sought to be embodied in his first request for ruling:
1. As to the question of turning overfunds collected for aclient, in this case the sum of $22,500.00, an attorney like defendant agrees, as part of his terms of representation that he promptly will pay over any money collected for a client, less his agreed upon fee. As the parties did not agree upon the fee and as defendant did not turn over said sums, the defendant is in breach of contract. See Blue Cross of Massachusetts v. Travaline, 398 Mass. 582, 499 *182 N.E.2d 1195 (1986). See also SJC Rule 3:07 Canon No. 9DR-9-102(b) (4).
That request was denied as contrary to the facts found. Plaintiffs other claim, that defendant violated the provisions of G.L.C. 221, §51 (concerning penalties for an attorney’s failure to turn over escrow funds), was also dealt with by the trial court in its response to plaintifPs cited requested ruling of law:
The defendant has not submitted a request for rulings of law. As to the request submitted by the plaintiff, No. 1 is denied since it is based on facts contrary to those found [by the court]. Based upon the facts found, [the court] concludes that no money is due the plaintiff. The plaintiff owed the defendant the $18,803.62 deducted and acquiesced in the procedure whereby the balance due was deducted from the DeGuzman deposit. Section 51 of G.L.c. 221 is inapplicable since no timely demand was made. Moreover, the defendant did not ‘unreasonably’ neglect to pay over the money. As plaintiffs attorney, he could deduct the balance due for his legal services in view of his notification to plaintiff that he was doing so and lack of any objection by the defendant. In any event, in these circumstances, there was “‘anhonestcontroversy between the parties” (see Zuckernick v. Jordan Marsh Co., 290 Mass. 151, 156 [1935]) that would eliminate the interest penalty under G.L.c. 221, §51.’ Doucette v. Kwait, 392 Mass. 915, 918 (1984).
Plaintiff filed four additional requests. They were dealt with as set forth in the margin.[5] Plaintiff claims to be aggrieved by the denial of his requests for rulings, the denial of his motion for a new trial, his motion to amend findings, and by what plaintiff describes as “the application of the law to the facts on the ground that the court’s finding that ‘there was an honest controversy between the parties’ was not supported by the facts found.” Hence this appeal.
PLAINTIFFS CT.ATM
Plaintiff describes “the crux” of his appeal as “ [t] he question whether the defendant did transfer funds that he held as escrow agent for a real estate purchase to himself to pay himself a legal bill without plaintiff[‘s] explicitly authorizing the deduction for legal fees.” Citing Blue Cross of Massachusetts v. Travaline, 398 Mass. 582 (1986), and Frontier Enterprises, Inc. v. Anchor of Marblehead, 404 Mass. 506 (1989), plaintiff answers that question “no.” While the plaintiff may have posed the question properly, in the special circumstances of this case, we disagree with his answer.
First, the cases plaintiff cites to support his contract and tort claims miss the point. In Blue Cross and in Frontier an attorney was sued personally for mishandling funds in his trust. In each case the attorney lost in the trial court. The trial judge entered summary judgment for Blue Cross because the attorney knew of its claim (it had paid *183 more than $42,000 for the client’s hospital and medical services) but sent the money to his client anyway. The trial judge found for Frontier because the attorney made payment of $45,000 as directed by his client, disregarding the existence of a security agreement that made plaintiff and others entitled to those funds. In each case the Supreme Judicial Court reversed. In Blue Cross (which was decided before legislation accorded statutory lien status to the type of claim made there, See G.L.c. 111, §70A, as amended by St. 1978, c. 133), the attorney was held to owe no duty to Blue Cross. Similarly, Frontier, hadn’t shown that the $45,000 involved was earmarked for Frontier.
In citing Blue Cross and Frontier, plaintiff does bring our attention to certain of an attorney’s responsibilities to a client which in Blue Cross is described this way:
As to the specific question of turning over funds collected for a client, an attorney agrees as part of his terms of representation that he promptly will pay over any money collected for a client, less his agreed upon fee. General Laws c. 221, §51, provides statutory penalties if an attorney fails in this regard. Additionally, S.J.C. Rule 3:07, Canon 9, DR 9-102(B) (4), as appearing in 382 Mass. 795 (1981), specifically requires that an attorney shall: ‘Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.’ On the facts of this case, Mr. Travaline owed no duty to Blue Cross/Blue Shield, [footnote omitted] Blue Cross of Mass. v. Travaline, 398 Mass. 582, 589 (1986).
But on its face neither Blue Cross nor Frontier is an apt analogy. As noted, in each of those cases an attorney was found not to have acted improperly with respect to funds each held that belonged to someone else. More to the point, neither attorney was in defendant’s position here — a long-standing creditor of his client who the trial judge found acquiesced in the payment from the escrowed funds.[6] On this central issue, plaintiff has failed to cite a single relevant case or authority. Instead, in essence, plaintiffs claim seems to come down to this: Both Blue Cross and the statute, G.L.c. 221, §51, which we will get to in a moment, require that unless an attorney is otherwise “explicitly authorized” in advance, (the quoted words come from plaintiff) that attorney must turn over all escrow funds to the client when the condition (s) for which the attorney holding funds in escrow is (are) satisfied. Plaintiff may find general support for that view in Bar Discipline cases. In several recent cases, for example, attorneys have been suspended for improper use or diversion of clients’ monies. See e.g. In the Matter of Dawkins, 412 Mass. 90 (1992). But that argument appears to beg the question here.
We begin with the observation that, as the cited cases underscore, an attorney runs a considerable risk in any case in which s/he fails immediately to turn over the proceeds of a client’s escrow to the client. But under the circumstances of this case we believe that the reported evidence supported the trial judge’s conclusion that the defendant acquiesced in the application of the escrow fimds to pay the attorney’s longstanding legal bill. Obviously, it would have made better sense (and the attorney may have been able to retain his client) had the question of fee payment been earlier *184 raised by defendant and expressly agreed to by plaintiff, preferably in writing, before the closing. Here though were the circumstances: the acknowledgement of the debt; its existence for more than a year; the earlier release of funds with the promise, not kept, that the bill would be paid; the later promise that payment would be made after the closing; the notice at the closing of defendant’s intention to have his old bill paid; the prompt accounting of the escrow funds, including the interest earned; the invitation for comment or complaint; the implied notice the escrow account was being closed; and the more than thirty-two month delay in objecting. In sum, we believe the evidence supports the trial judge’s finding that plaintiff acquiesced in the payment.[7]
Thus, since defendant was justifiably found to have agreed to the payment, obviously his contract, tort and 93A claims fail.
For even more compelling reasons the same result obtains with respect to plaintiff s claim under G.L.c. 221, §51, which says this:
An attorney at law who unreasonably neglects to pay over money collected by himfor and in behalf of aclient, when demanded bv the client, shall forfeit to such clientfive times the lawful interest of the money from the time of the demand, (emphasis added)
As Chief Justice Rugg said in commenting on the earlier version of that statute, G.Lc. 165, §49, the law “governs the duties and obligations of attorneys at law. [It] expresses the public abhorrence for the breach of the obligation of any attorney at law promptly and fully to account to his clients for collections made on their behalf. It is a practical measure devised not only to be in a sense a punishment to the attorney, but also to benefit the client. It should be construed so as to affect reasonable relief.” Griffiths v. Power, 216 Mass. 169, 170 (1913).
The statute has since been described as providing “general rights a client has to recover money an attorney receives on the client’s behalf.” Frontier Enterprises, Inc. v. Anchor Co. of Marblehead, Inc., 404 Mass. 506, 511 (1929), citing Cameron v. Sullivan, 372 Mass. 128, 133, n.6 (1977), and Cannon v. Fahey, 327 Mass. 245, 246 (1951).
While the statute thus establishes high standards and imposes a severe penalty for its violation, two conditions must be met in order for the penalty provision of the statute to become applicable. The failure to turn over the collected funds (1) must result from “unreasonable neglect”, and (2) “when demanded by the client.”
Here, as noted, the trial judge found that neither condition was satisfied. Without restating all the details, when defendant accounted to plaintiff for the escrow funds and solicited a response, timing mattered. At the least, the escrow account was being closed. Yet plaintiff did not respond for more than thirty-two months. While the statute does not include a requirement for a “timely demand,” under the circumstances of this case we believe timeliness became an issue with respect to the question whether any neglect, if it existed, was unreasonable, as well as the issue of “when demanded by the client.”
In sum, the statute does not mandate the immediate turning over of all funds to a client under all circumstances. Rather, it requires immediate disclosure and an accounting. As noted, it is by far the more prudent and wiser course for counsel to obtain express, prior written authorization to retain any portion of the client’s funds in payment of a fee. However, in the circumstances of this case we believe the trial judge was warranted in finding that the defendant did not “unreasonably neglect to pay out the money.” Since the express conditions of the statute were thus found not *185 satisfied, its penalty provisions do not apply. See Cameron v. Sullivan, 372 Mass. 128 (1977). Compare Cannon v. Foley, 327 Mass. 245 (1951).
Thus, plaintiffs appeal fails. Report dismissed.

 While the record is unclear with respect to the transfer, we assume it was not contested. In any event it is not an issue in this case.

 Again, the report is silent as to what was said at the closing. In any event, what in fact happened with the escrow account is made clear by later events which are reported.

 Again we are told nothing more about the so-called 93A letter.

 While the report refers to Exhibits 2 and 3 as embodying defendant’s counterclaim and plaintiffs answer to it, no exhibits were in fact appended to the Report Since we do not reach that matter, this is not a significant omission.

 Plaintiffs other requests for rulings and the trial judge’s responses follow:
#2. General Laws Chapter 221, §51 provides statutory penalties if any attorney fails to turn over such funds.
Action of Court thereon:
No action is taken on the plaintiffs second request since the statute speaks for itself.
The remaining requests are denied since they assume facts contrary to those found above.
# 3. The failure to comply with the terms of the Purchase and Sale agreement by which the defendant was to act as an escrow agent constitutes breach of contract and the damages are $19,000.00.
#4. The unreasonable failure to pay over such funds is a breach of duty amounting to negligence in the circumstances.
#5. The failure described above violates G.L.c. 93A and to the extent such violation is wilful, the defendant is liable for multiple damages.

 As mentioned earlier, plaintiff may not initially have been personally responsible for defendant’s entire legal bill (“due... for legal services rendered to the plaintiff, his wife, and a corporation in which plaintiff was involved in relation to the DeGuzman sale and other matters”). But the Report explicitly notes that “the defendant had previously turned over other funds to the plaintiff on the plaintiff s representation that his bill would be paid... [and that plaintiff promised] he would pay [defendant] when he could.” Nor does plaintiff press the issue and we therefore donotconsiderit Compare Blake v. Corcoran, 211 Mass. 106, 408 (1912) (fatherhad no authority to commit money owed to his son).

 In the view we take of this case, it isn’t necessary to consider defendant’s counterclaim concerning the acknowledged debt. In this regard, see Newell v. Post, 149 Mass. 520 (1889), and In re G.E. Redmond and Co., Inc., 7 Fed. Rep. (D.C.D. Mass, 1927) 502. (“That an attorney has a right to set off his claim for compensation against funds in his hands which belong to his client has long been recognized in the courts of this state.”)