BLUE CROSS OF MASSACHUSETTS, INC., & another[1] *vs.*
JOSEPH T. TRAVALINE.

Middlesex.   September 12, 1986. — November 19, 1986.

Present: HENNESSEY, C.J., LIACOS, LYNCH, & O'CONNOR, JJ.

*Attorney at Law,* Fiduciary duty.  *Agency,* Agent's liability to third person.
*Subrogation.*

Discussion of the decision of this court in *General Exch. Ins. Corp.* v. *Dris-coll*, 315 Mass. 360 (1944), with respect to the duty of an attorney representing a client in a negligence action to turn over to the client's insurer any proceeds received in the negligence case. [587-589]

An attorney representing a plaintiff and her mother in two tort actions arising from an automobile accident was not liable to the health care insurers of the tort plaintiff's mother for amounts the insurers had paid for the tort plaintiff's hospital and medical expenses, where the tort actions had been settled for the maximum available under the tort defendants' insurance coverage, where the amounts received by the attorney from the settlements did not reflect either the value of the tort plaintiff's claim nor the specific expenditures caused by her accident, where the only claim to reimbursement held by the health care insurers was one of subrogation arising out of a standardized health care insurance contract, and where no attorney-client relationship existed between the health care insurers and the attorney. [589-590]

CIVIL ACTION commenced in the Superior Court Department on June 22, 1981.

Motions for summary judgment were heard by *Hiller B. Zobel,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Erik Lund (Mark S. Bodner* with him) for the defendant.
*Jeffrey Swope (Maria P. Nichols* with him) for the plaintiffs.

---

[1] Blue Shield of Massachusetts, Inc.

LIACOS, J. This appeal arises as a result of a complaint brought by Blue Cross of Massachusetts, Inc.,[2] and Blue Shield of Massachusetts, Inc.[3] (Blue Cross/Blue Shield), against Joseph T. Travaline, an attorney, seeking to hold him personally liable in the amount of $42,848 (plus interest and costs) which Blue Cross/Blue Shield had paid for hospital and medical services rendered to Susan Darish. On the basis of a subrogation provision in the Master Medical certificate under which Susan Darish's hospital and medical bills were paid, Blue Cross/Blue Shield claimed "so much of the proceeds of any settlement received on account of the tort claim of Susan Darish as represented the interest of Blue Cross and Blue Shield." Blue Cross/Blue Shield alleged that Mr. Travaline was liable to Blue Cross/Blue Shield for their expenditures on Susan Darish's behalf because they had notified him of the subrogation provision in the Master Medical certificate.

Mr. Travaline filed an answer and a counterclaim against Blue Cross/Blue Shield, alleging that compliance with Blue Cross/Blue Shield's demands would have placed him in conflict with the interests of his client and would have violated S.J.C. Rule 3:07, Canons 4 and 5, as appearing in 382 Mass. 778, 779 (1981), and Canon 9, as amended, 395 Mass. 1109 (1985). He also alleged that no part of the settlement of Susan Darish's claim was allocated or attributable to any services or supplies paid for by Blue Cross/Blue Shield; that he had no duty or obligation to Blue Cross/Blue Shield; and that their conduct seeking to interfere with his relationship with his client by bringing an unwarranted action constituted unfair and deceptive acts and practices in contravention of G. L. c. 93A (1984 ed.), the Consumer Protection Act. The parties submitted the issues to a judge of the Superior Court in Middlesex County on a statement of agreed facts and exhibits, and cross motions for summary judgment. Mass. R. Civ. P. 56, 365 Mass. 824 (1974).

---

[2] Blue Cross of Massachusetts, Inc. (Blue Cross), is a hospital service corporation organized and regulated pursuant to G. L. c. 176A (1984 ed.).

[3] Blue Shield of Massachusetts, Inc. (Blue Shield), is a medical service corporation organized and regulated pursuant to G. L. c. 176B (1984 ed.).

On July 25, 1985, the judge allowed Blue Cross/Blue
Shield's motion for summary judgment. He ordered that judg-
ment enter for Blue Cross/Blue Shield in the amount of
$42,848.66, with interest ($21,038.69) and costs, and that
judgment enter dismissing Mr. Travaline's counterclaim.[4] In
a memorandum of decision, the judge stated, in part, "[I]t
appears to the Court that Defendant knew of Plaintiffs' subro-
gation claim *before* any of the third-party settlement funds
came into his hands, *compare National Union Fire Insurance
Co.* v. *Greenberg,* 7 Mass. App. Ct. 869 (1979) (rescript).
Thus he was under an *equitable* duty to hold for Plaintiffs so
much of the funds as represented Plaintiffs' known interest,
and certainly a *legal* one. *General Exchange Insurance Corp.*
v. *Driscoll,* 315 Mass. 360, 365 (1944). Nothing in Defend-
ant's professional duty to his client relieved him of this obliga-
tion to Plaintiffs, *ibid.* Defendant urges the Court not to apply
*Driscoll*; the Court, however, regards itself as bound by *Dris-
coll* until such time as the Supreme Judicial Court indicates a
change in the applicable principle. On the agreed facts, and
the pertinent, presently controlling authority, it appears to the
Court that as a matter of law, Defendant was holding funds
'which in equity and good conscience' belonged to Plaintiffs,
*ibid.*"

Mr. Travaline appealed. We transferred the case to this court
on our own motion. We reverse and order entry of judgment
for Mr. Travaline.

We summarize the facts. On August 27, 1978, Susan Darish,
a sixteen year old Malden student, was seriously injured in an
automobile accident. Mr. Travaline was retained to pursue tort
claims against third parties responsible for the accident. Under
a Blue Cross/Blue Shield Master Medical certificate issued to
her mother, Bernice S. Darish (Mrs. Darish), Susan received
at least $42,782.66 in hospital and medical services for injuries

---

[4] Mr. Travaline does not argue the G. L. c. 93A claim on appeal, nor
does he argue that the dismissal of his counterclaim was in error. The issue
is, therefore, waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass.
919 (1975). *Mirageas* v. *Massachusetts Bay Transp. Auth.,* 391 Mass. 815,
818 n.4 (1984).

suffered in the accident. The Master Medical certificate contained a subrogation clause which provided:

> "To the extent that benefits for services, supplies, or both, are provided hereunder, Blue Cross and Blue Shield shall be subrogated and succeed to any rights of recovery of the Member or Subscriber because of such services or supplies against any person or organization. The Member and the Subscriber shall pay over to Blue Cross and Blue Shield all amounts recovered by suit, settlement, or otherwise from any third person or his insurer to the extent of the benefits provided hereunder. The Subscriber and Member shall take such action, furnish such information and assistance, and execute such instruments as Blue Cross and Blue Shield may require to facilitate enforcement of their rights hereunder and shall take no action prejudicing the rights and interests of Blue Cross and Blue Shield hereunder."

Following Susan's accident and treatment, Blue Cross/Blue Shield wrote Mr. Travaline five letters notifying him of their subrogation claim. By a letter dated April 10, 1979, they advised Mr. Travaline that benefits had been provided to Susan and gave notice of their subrogation rights and of the Darishes' contractual obligation under the Master Medical certificate. By a letter dated May 21, 1979, Blue Cross/Blue Shield informed Mr. Travaline that $16,910 in benefits had been paid to date on account of Susan's accident; suggested that he give them advance notice of any settlement; and requested the name of the third party and his insurance company so that they might give notice of the subrogation provision. By identical letters dated September 11, 1979, and January 14, 1980, Blue Cross/Blue Shield reiterated their subrogation claim, again reported $16,910 in benefits extended to date, and requested a status report from Mr. Travaline. Mr. Travaline did not respond to any of these form letters. On June 13, 1980, Blue Cross/Blue Shield again wrote to Mr. Travaline and, for the first time, stated their position that, under Massachusetts law, as set out

in *General Exch. Ins. Corp.* v. *Driscoll,* 315 Mass. 360, 365 (1944), Mr. Travaline, as attorney for Susan, had "a legal duty 'to hold for (Blue Cross and Blue Shield) so much of the proceeds of the cause of action as represented (their) known interest.'" They also threatened to bring suit against him personally for an amount equal to the benefits they provided if he settled or otherwise disposed of Susan's claim without their consent.[5] By letter dated June 20, 1980, Mr. Travaline responded that he did not represent Blue Cross/Blue Shield, was unaware of what rights they purported to assert, and would not disclose any information in his clients' file.

During this period, Mr. Travaline filed and settled two complaints on behalf of Susan and Mrs. Darish, seeking damages on account of the August 27, 1978, accident. The first, filed in August, 1979, against the owner and the operator of the vehicle in which she was a passenger, was terminated by agreement for judgment filed the same day. In settlement of the claim, Mr. Travaline received a check for $100,000, the maximum insurance coverage available to the named defendants. After deducting costs and attorney's fees, Mr. Travaline disbursed $66,670 to Mrs. Darish. His letter to Mrs. Darish referred to Blue Cross/Blue Shield's subrogation claim but disclaimed any position on its validity. On November 1, 1979, Mr. Travaline filed a second complaint on the Darishes' behalf against the driver of one of the vehicles involved in the highway chase which resulted in Susan's injuries. When this action was settled in September, 1980, Mr. Travaline received a check for $10,000, the full coverage available to the named defendant, deducted costs and attorney's fees, and disbursed the remainder to the Darishes. The parties agreed that damages claimed in both actions included benefits extended by Blue Cross/

---

[5] While it is not material to our decision, we note that the record shows that this assertion was made *after* the major tort claim had been settled on August 29, 1979, and the monies received, less fees and expenses, had been reimbursed to the client. Additionally, the Blue Cross/Blue Shield letters to Mr. Travaline demanded only the sum of $16,910.

Blue Shield on account of injuries sustained by Susan on August 27, 1978.[6]

1. *Applicability of General Exch. Ins. Corp. v. Driscoll.* The judge stated in his memorandum of decision that he considered himself bound by this court's opinion in *General Exch. Ins. Corp. v. Driscoll,* 315 Mass. 360 (1944), to grant summary judgment for Blue Cross/Blue Shield.[7] In *General Exch. Ins. Corp. v. Driscoll, supra,* the defendant attorney represented a client in an action arising out of an automobile collision. The plaintiff insurance company had paid the client $450 under the terms of its policy and had taken from him "subrogation agreements" by which the client subrogated the plaintiff to all rights and causes of actions he had for damage to his automobile. *Id.* at 361. Mr. Driscoll filed an action on his client's behalf for personal injury and, in a separate count, for property damage. Mr. Driscoll settled the action for $2,500, paid in the form of two drafts, one for $2,200 and one for $300. The smaller draft included the printed words "property damage." After retaining his fee and expenses, Mr. Driscoll paid over the remainder to his client. On those facts, this court held that the insurance company could maintain an action against the attorney for the $300 earmarked specifically as payment for

---

[6] Although it is not a matter agreed on, Mr. Travaline claimed that the settlement for the face amount of the policy coverage was accepted, albeit inadequate compensation, because no third party had assets available to satisfy a judgment beyond his respective insurance coverage.

[7] Mr. Travaline's notice of Blue Cross/Blue Shield's subrogation claim prior to receipt of settlement funds seemed determinative to the judge. The fact that an attorney had notice of an insurer's subrogation claim before receiving third-party settlement funds would be a necessary, but not a sufficient factor in deciding to hold him liable personally if he turned those funds over to his client rather than to the insurer. But cf. note 5; *supra.* The decision in *National Union Fire Ins. Co. v. Greenberg,* 7 Mass. App. Ct. 869 (1979), is not dispositive of this case. In *Greenberg,* the Appeals Court reversed an order of summary judgment entered against the defendant, an attorney, where there was a genuine and material issue of fact whether the defendant attorney had notice of the insurance company's subrogation rights to a portion of a client's settlement proceeds. Had he no notice, he could not have been liable for failing to turn over monies to the insurer. That does not mean that notice by itself would be sufficient to impose such a duty on the attorney on behalf of his client's insurer.

"property damage" which he had paid over to his client. *Id.*
at 365. "[The subrogation agreements] gave the plaintiff the
right to receive the proceeds of such causes of action in so far
as such proceeds should arise from and be traceable to the
damage to [the insured's] automobile."[8] *Id.* at 364. As the
court noted, "The sum of $300 had been segregated in a separate
draft and earmarked as property damage and must be deemed
to have been paid by [the third party's] insurer and accepted
by the defendant as such." *Id.* at 364-365.

*General Exch. Ins. Corp.* v. *Driscoll, supra,* is distinguish-
able. In the case at bar, the settlement was neither allocated
nor earmarked in whole or in part to any payment made by
Blue Cross/Blue Shield.[9] The amount of settlement here was
determined by the maximum available under the tort defend-
ants' insurance coverage. It reflected neither the value of
Susan's claim nor the specific expenditures caused by her ac-
cident.[10] In fact, as of the time of settlement, Mr. Travaline
had been informed of only $16,910.41 in benefits extended
by Blue Cross/Blue Shield. See note 5, *supra.* The *Driscoll*
court's decision to award the insurance carrier the $300, marked
"property damage," was based on the theory that the money
"belonged" to the insurance company. The court stated that
"an action for money had and received will lie where the
defendant has received money or its equivalent which in equity
and good conscience *belongs* to the plaintiff" (emphasis added).
*Id.* at 365. In this case, the money at issue belonged not to Blue

---

[8] Significantly, the court held that the company was entitled not to the
amount expended ($450) but only to the amount received in settlement
($300) specifically for property damage. *Id.* at 361, 362.

[9] In addition, the court in *General Exch. Ins. Corp.* was not required to
apply the provisions of the Code of Professional Responsibility to the facts
there presented.

[10] While Susan's answers to interrogatories propounded by one of the tort
defendants included physician's bills in an itemization of her financial loss,
and the parties agreed that the benefits extended by Blue Cross/Blue Shield
were included in Susan's claims for damages, the decisive fact in *General
Exch. Ins. Corp.* was that monies *received,* not monies expended or included
in claims for damages, were earmarked as payment for services rendered
by the insurance company. *General Exch. Ins. Corp.* v. *Driscoll, supra* at
361, 362.

Cross/Blue Shield but to the Darishes. Blue Cross/Blue Shield did not give Mr. Travaline the money, and the money was not given to him for Blue Cross/Blue Shield. The only claim to reimbursement held by Blue Cross/Blue Shield was one of subrogation arising out of the fifteen-page standardized contract between Blue Cross/Blue Shield and Susan's mother. Mr. Travaline was not a party to that contract, and his actions cannot be controlled by its terms.

2. *The attorney owed a duty to his clients, not to Blue Cross/Blue Shield.* Mr. Travaline owed a duty only to his clients, Susan and Mrs. Darish. As to the specific question of turning over funds collected for a client, an attorney agrees as part of his terms of representation that he promptly will pay over any money collected for a client, less his agreed upon fee. General Laws c. 221, § 51, provides statutory penalties if an attorney fails in this regard. Additionally, S.J.C. Rule 3:07, Canon 9, DR 9-102 (B)(4), as appearing in 382 Mass. 795 (1981), specifically requires that an attorney shall: "Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive." On the facts of this case, Mr. Travaline owed no duty to Blue Cross/Blue Shield.[11]

It is undisputed that no attorney-client relationship existed between Blue Cross/Blue Shield and Mr. Travaline. Mr. Travaline specifically informed Blue Cross/Blue Shield in his letter of June 20, 1980, that he would not represent their interests. There is no indication in the record of any agreement between the Darishes and Mr. Travaline that he would also represent Blue Cross/Blue Shield's interests in this matter.[12]

---

[11] Where both parties presumably would have sought the maximum share of a fixed, limited settlement from the tort defendants' insurance carriers, a conflict of interest would have arisen had Mr. Travaline attempted to represent the interests of Blue Cross/Blue Shield at the same time that he was representing the Darishes, absent authorization from his clients.

[12] According to the complaint filed by Blue Cross/Blue Shield, they wrote to Joseph Darish, Susan's father, on March 16, 1979, to request information concerning claims relating to Susan, to advise him of the subrogation provision, and to inquire whether he had retained an attorney to represent them

Absent such an agreement in advance between an attorney and his original client that he will also represent the client's insurer's interest, and, absent a statutory provision to the contrary,[13] an attorney is not required to serve as a collection agent for his client's insurance carrier unless it can be shown, as it was in *General Exch. Ins. Corp.* v. *Driscoll,* 315 Mass. 360 (1944), that the attorney received money belonging to the insurance carrier.

In ordering the entry of judgment for Mr. Travaline, we express no opinion on the validity of any claim which Blue Cross/Blue Shield might bring directly against the Darishes on the basis of the subrogation provision of the Master Medical certificate under which Blue Cross/Blue Shield reimbursed hospital and medical expenses incurred by Susan as a result of her accident on August 27, 1978. We also do not reach the question, what allocation, if any, would be appropriate among different claims when a settlement is for an amount less than that necessary to reimburse fully an accident victim.

*Judgment reversed.*

in a tort claim. In response, Mrs. Darish indicated that Mr. Travaline was pursuing a tort claim and that he had the information concerning that claim.

[13] Both parties note the subsequent enactment of legislation which would accord statutory lien status to the type of claim involved in this case. G. L. c. 111, § 70A, as amended through St. 1978, c. 133. The parties are in accord that the statute does not govern the duties and obligations between the parties concerning an accident which occurred prior to January 1, 1979. St. 1978, c. 133, § 3.