FRONTIER ENTERPRISES, INC. *vs.* ANCHOR COMPANY
OF MARBLEHEAD, INC., & others.[1]

Suffolk.   December 8, 1988. — April 6, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Escrow. Secured Transactions. Uniform Commercial Code*, Security in-
terest. *Attorney at Law*, Attorney-client relationship, Fiduciary duty.
*Agency*, Agent's liability to third person. *Words*, "Escrow agent,"
"Account debtor."

An attorney who disbursed, at the direction of his client, funds he held
which were generated by the client's sale of collateral in which a third
party had a security interest, was not acting as an escrow agent when
he received the funds, where the disbursement to his client had not been
conditioned upon performance of any act or the happening of any event;
nor was he acting as an account debtor, where he simply collected the
funds as an agent for his client, and there had been no intent expressed
in the security agreement to subject to the third party's security interest
a future right of the client to collect money for its attorney; consequently,
upon receipt of the funds on behalf of his client, the attorney's obligation
to the third party was merely that of an attorney representing interests
other than the third party's. [510-511]

At the trial of a civil action arising out of an attorney's disbursing, at the
direction of his client, funds he held which were generated by the client's
sale of collateral in which a third party had a security interest, the
evidence did not warrant a finding that the funds the attorney held
belonged to, or were earmarked for, the third party, where the third
party introduced no evidence, other than the security agreement and the
sales agreement, concerning the portion of the funds which represented
the third party's interest, or which was traceable to this interest; con-
sequently, the judge erred in determining that the attorney should have
held the funds for the third party. [511-514]

[1] Anchor Sanitation Company, Inc., Harvey W. Levin, Irvin M. Davis,
Peter F. Davis, Richard H. Davis, Herbert Lemelman, trustee, City Bank
& Trust Company, trustee, Anchor Fuel Corporation, Acomi Corporation,
and Anita Davekos. The only defendants remaining on appeal are Harvey
W. Levin, Irvin M. Davis, Peter F. Davis, and Richard H. Davis, attorneys.

CIVIL ACTION commenced in the Superior Court Department on August 16, 1979.

The case was heard by *Elbert Tuttle*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Elliott J. Mahler* (*Judith Ashton* with him) for the defendants.

*John C. Plotkin* for the plaintiff.

HENNESSEY, C.J. The defendants, Attorney Harvey W. Levin and his partners, appeal from a judgment finding Mr. Levin liable for conversion for disbursing, at the direction of his client, Anchor Company of Marblehead (Anchor-Marblehead), funds he held which were generated in part by Anchor-Marblehead's sale of collateral in which the plaintiff, Frontier Enterprises, Inc. (Frontier), had a security interest. We transferred the case here on our own motion. We reverse and order entry of judgment for Mr. Levin and his partners.

We summarize the facts as found by the judge and review the documentary evidence. Anchor-Marblehead was a corporation in the business of providing home heating fuel to homeowners in the Marblehead area. During and prior to 1975, Frontier supplied Anchor-Marblehead with fuel oil. Anchor-Marblehead had been experiencing financial difficulties, and by October, 1975, it owed Frontier approximately $448,450 for fuel oil. To induce Frontier to continue supplying it with fuel oil, in June, 1976, Anchor-Marblehead as assignor granted Frontier as assignee a security interest in "all monies and claims for money due or to become due to the assignor under all of the assignor's . . . present and future accounts, contract rights, chattel paper and general intangibles, as those terms are defined in the Uniform Commercial Code." Anchor-Marblehead granted this security interest for the purpose of "securing the payment of all present and future indebtedness of the Assignor to Frontier." Mr. Levin handled this transaction as attorney for Anchor-Marblehead.

Anchor-Marblehead continued to experience financial difficulties. In September, 1976, Anchor-Marblehead with other sellers entered into an agreement to sell certain assets to Anchor

Fuel Corporation (Anchor Fuel). The sales agreement identifies the other sellers as Anchor Sanitation Company, Inc. (Anchor Sanitation), Peter A. Davekos, Peter G. Davekos, and George Davekos. It is undisputed that the Davekoses were principals of Anchor-Marblehead. In this agreement, the sellers agreed to sell to Anchor Fuel, "[t]he sellers' complete list of customers . . . together with the exclusive right to use Sellers' name 'Anchor' in all matters pertaining to the retail sale of home heating fuel oil." The sellers also agreed to sell certain equipment and supplies which the agreement states were owned by Anchor Sanitation. As part of the same transaction, the Davekoses entered into covenants not to compete with Anchor Fuel.

In exchange for these assents and the covenants not to compete, the sellers were to receive under the agreement $90,000 for the equipment and supplies. The sellers also were to receive an additional amount, the formula price, based on the quantity of heating oil Anchor Fuel sold to the customers on the sellers' customer list. In the sales agreement, the parties allocated $500 of the formula price to the purchase of the customer list, good will, and the "Anchor" trade name, and allocated the remainder to the covenants not to compete. Anchor Fuel, as an advance on this formula price, was to pay $80,000 into an escrow account to be held by a Boston law firm. The payment of both the $90,000 for the equipment and the $80,000 advance on the formula price were conditioned on an audit by Anchor Fuel confirming the amount of sales previously made to accounts on the customer list. The agreement states that, upon a satisfactory audit, the escrowee law firm was to pay the advance over "to the Sellers' Attorneys, Davis, Davis, Davis and Levin of Boston." The sellers' attorneys were not parties to the agreement.

Mr. Levin received the sum of $45,000 under this sales agreement. A subsequent lawsuit developed between the parties to the sale. The lawsuit ultimately was terminated with no further funds being paid to the sellers under the sales agreement. At the direction of Peter G. Davekos, the controlling stockholder of Anchor-Marblehead, Mr. Levin distributed the $45,000 he

received to entities other than Frontier. At the time Mr. Levin distributed these funds, he had been notified by Frontier that Frontier claimed it was entitled to the entire $45,000 because of its security agreement.

Approximately three years after giving notice to Mr. Levin, Frontier brought an action against Anchor-Marblehead, Anchor Sanitation, Mr. Levin, Mr. Levin's partners, Anchor Fuel, and various other defendants seeking to recover the full amount owed to it by Anchor-Marblehead. The counts against all the defendants but Mr. Levin and his partners were disposed of by summary judgment, dismissal, or default. The judge found for Frontier on its count against Mr. Levin and his partners, and concluded that Mr. Levin converted the $45,000. Because he found that the conversion occurred while Mr. Levin was acting in the ordinary course of business of his law partnership, the judge ruled that Mr. Levin's partners were jointly and severally liable for Mr. Levin's acts.

The judge reasoned that Anchor-Marblehead had a contingent right to the payment of money held in escrow under the sales agreement with Anchor Fuel. When this contingent right to payment arose, he determined, it became subject to Frontier's security interest as an account or a general intangible. The judge also reasoned that Mr. Levin acted as escrow agent under the sales agreement and, as such, was obligated by the agreement to pay the $45,000 he received to Anchor-Marblehead. The judge stated that Mr. Levin, therefore, was "obligated on an account . . . or general intangible" and was thus an "account debtor" under the Uniform Commercial Code, Art. 9, G. L. c. 106, § 9-105 (1) (*a*), inserted by St. 1957, c. 765, § 1. As an account debtor, the judge ruled, Mr. Levin was required to pay the obligation he owed to the debtor, Anchor-Marblehead, directly to the secured party, Frontier, upon receiving notice of the secured party's intent to collect. The judge found that Mr. Levin had notice of Frontier's claimed right to the $45,000. Therefore, even though the judge stated that other sellers under the sales agreement had rights to the $45,000, he concluded that Mr. Levin was liable to Frontier for failing to pay it the entire $45,000 directly.

. We first consider Mr. Levin's arguments that the judge erred in finding that he acted as an escrow agent or an account debtor under the sales agreement. We conclude that Mr. Levin received the $45,000, not as an escrow agent or an account debtor, but merely in his capacity as attorney for the sellers, Anchor-Marblehead and the Davekoses. An escrow is created when one party to a transaction delivers a sum to a third party, the escrow agent, for him or her to hold until the performance of a condition and then to deliver to the other party to the transaction. See *Childs* v. *Harbor Lounge of Lynn, Inc.*, 357 Mass. 33, 35 (1970); *Artemis* v. *Malvers*, 322 Mass. 136, 138 (1947). Under the sales agreement, Mr. Levin was to receive from the named escrow agent the advance on the formula price. Mr. Levin's delivery of this sum to his clients was not conditioned upon the performance of some act or other happening of some event. See *Childs, supra.* Because Mr. Levin held the funds unconditionally, the judge erred in concluding that he was acting as an escrow agent.

The judge also erred in concluding that Mr. Levin was an account debtor. At the time, the Uniform Commercial Code defined an "account debtor" as "the person who is obligated on an account, chattel paper, contract right or general intangible." Art. 9, G. L. c. 106, § 9-105 (1) (*a*), inserted by St. 1957, c. 765, § 1. The official comments further clarified this definition by stating that "[w]here the collateral is an account, contract right, chattel paper or general intangible the original obligor is called the 'account debtor.'" 3 U.L.A. Art. 9, § 9-105, 1972 official comment 2 at 165 (Master ed. 1981). Thus, in a situation which involves an account debtor, there are three parties: (1) the account debtor, who is obligated in some fashion to the debtor; (2) the debtor, who has used his or her rights against the account debtor as collateral for his or her own financing; and (3) the secured party, who has a security interest in the debtor's rights against the account debtor. See 8 W.D. Hawkland, R.A. Lord & C.C. Lewis, Uniform Commercial Code Series (Art. 9) § 9-105:02 (1986). Mr. Levin was not an escrow agent under the sales agreement, and was not otherwise obligated under this agreement. Therefore, the only rights

Anchor-Marblehead had against Mr. Levin for any portion of the $45,000 were those general rights a client has to recover money an attorney receives on the client's behalf. G. L. c. 221, § 51 (1986 ed.). See *Cameron* v. *Sullivan*, 372 Mass. 128, 133 n.6 (1977) (client has action in contract for amounts attorney withheld from client); *Cannon* v. *Fahey*, 327 Mass. 245, 246 (1951) (same).

We perceive no intent by Frontier and Anchor-Marblehead in their security agreement to subject to Frontier's security interest a future right of Anchor-Marblehead to collect money from its attorney. Other courts have noted that a person does not become an account debtor under the Uniform Commercial Code by simply collecting a sum as an agent for the debtor. E.g., *Utica Nat'l Bank & Trust Co.* v. *Associated Producers Co.*, 622 P.2d 1061, 1065 & n.14 (Okla. 1980). Therefore, we conclude that the judge erred in determining that Mr. Levin was an account debtor. Consequently, Mr. Levin was not required by the provisions of the Uniform Commercial Code to pay all or some of the $45,000 directly to Frontier.

Thus, upon receipt of the $45,000, Levin's obligations to Frontier were those of neither an escrow agent nor an account debtor, but those of an attorney representing interests other than Frontier's. We have examined previously the obligation an attorney owes to a third party who claims an interest in funds the attorney receives on behalf of his or her client. *Blue Cross of Mass., Inc.* v. *Travaline*, 398 Mass. 582 (1986). *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360 (1944). An attorney may be liable for paying funds to his or her client which are "earmarked" for a third party and which "belong" to the third party. *Travaline, supra* at 588-589, 590. *Driscoll, supra* at 364-365. The funds must meet these criteria because, as we have noted, imposing on an attorney the obligation to pay funds to a third party may compromise the attorney's statutory and ethical duty to pay his or her client any money collected on the client's behalf. *Travaline, supra* at 589. See G. L. c. 221, § 51 (1986 ed.); S.J.C. Rule 3:07, Canon 9, DR 9-102 (B) (4), as appearing in 382 Mass. 795 (1981).

In the *Driscoll* opinion, we concluded that certain funds received by the defendant attorney were earmarked for, and belonged to, the plaintiff insurance company and therefore determined that the attorney was liable for turning these funds over to his client. *Id.* There, although the attorney knew that his client's right to collect property damage had been subrogated to the plaintiff insurance company, the attorney nonetheless turned over to his client a check specifically earmarked as a settlement for the client's property damage. *Id.* at 361-362. We reasoned that the subrogation agreement between the client and the plaintiff insurance company gave the insurance company the right to receive proceeds which "should arise from and be traceable to" the client's property damage. *Id.* at 364. Because the check the attorney received directly arose out of, and was traceable to, the client's property damage, we concluded that the attorney was required "to hold for the plaintiff so much of the proceeds . . . as represented the plaintiff's known interest." *Id.* at 365. We stated that "[t]here was nothing in the defendant's status as [an] attorney . . . which made it his duty to pay his client money which he knew, or must be charged with having known, belonged to the plaintiff." *Id.*

We reached a different result in *Travaline* because we determined that no portion of the funds the defendant attorney received were earmarked for or belonged to the plaintiff. *Id.* at 588-590 & n.10. There, the plaintiff insurance company claimed that the attorney should have turned over to it that portion of the settlement the attorney obtained which represented the amount it paid for his client's medical expenses. *Id.* at 585-586. We noted that "the settlement was neither allocated nor earmarked in whole or in part to any payment made by [the plaintiff insurance company]," and that "[t]he amount of settlement . . . was determined by the maximum available under the tort defendants' insurance coverage [and] reflected neither the value of [the client's] claim nor the specific expenditures caused by her accident." *Id.* at 588. We therefore determined the situation was distinguishable from *Driscoll*, and concluded that, although the attorney had notice of the plaintiff's claims, he was not required to withhold from his

client funds for the benefit of the plaintiff, his client's insurer. *Travaline, supra* at 588-590. We stated that "an attorney is not required to serve as a collection agent for [a third party] unless it can be shown . . . that the attorney received money belonging to the [third party]." *Id.* at 590.

We conclude that Frontier failed to show that some portion or all of the funds Mr. Levin received belonged to and were earmarked for Frontier, and therefore decide that, under *Driscoll* and *Travaline*, Mr. Levin was not required to hold the funds for Frontier. The plaintiff generally has the burden of proving the facts which establish the defendant's liability. *Smith* v. *Hill*, 232 Mass. 188, 190 (1919), aff'd, 260 U.S. 592 (1923). *Hughes* v. *Williams*, 229 Mass. 467, 470 (1918). Here, Frontier introduced only the security agreement and the sales agreement to substantiate its claim that, by virtue of its security agreement with Anchor-Marblehead, it was entitled to the entire $45,000 generated by the sales agreement with Anchor Fuel. The judge found that other parties to the transaction with Anchor Fuel had rights, in addition to those of Anchor-Marblehead, in this $45,000. We agree with the judge that, based on the sales agreement, Anchor-Marblehead did not have a right to the entire $45,000. The sales agreement, reasonably construed within its four corners, indicates that the money Mr. Levin was to receive was in exchange for (1) Anchor-Marblehead's goodwill, trade name, and customer list, and (2) the Davekoses' covenants not to compete. Even if we were to conclude that Frontier's security interest covered all assets sold by Anchor-Marblehead, and continued in the proceeds of the sale of this collateral, see Art. 9, G. L. c. 106, § 9-306 (2), Frontier's security interest clearly did not cover the covenants not to compete, which were transferred by the Davekoses, and not the debtor, Anchor-Marblehead.[2] Frontier introduced no evidence, other than the security agreement and the sales agree-

---

[2] Frontier could have improved its situation, of course, by attention to the language of the security agreement, and to the signatories to that instrument (the Davekoses participated only as corporate officers) and also by recourse to trustee process. G. L. c. 246, §§ 1 et seq.

ment, concerning the portion of the $45,000 which represented Frontier's interest, or which was traceable to this interest. We conclude, therefore, that a finding was not warranted that the funds Mr. Levin held belonged to, or were earmarked for, Frontier. See *Travaline, supra* at 588-590; *Driscoll, supra* at 364-365. Consequently, the judge erred in determining that Mr. Levin should have held the funds for Frontier. Judgment is reversed and a new judgment for the defendants is to be entered.

*So ordered.*