Jill SUMMER

v.

Neil E. LEVINE.

No. 97–503–A.

Supreme Court of Rhode Island.

March 19, 1999.

Robert A. Mitson, Douglas James Rose, Lincoln, C. Joseph Summer.

Kevin M. Brill, Jeffrey S. Brenner, Boston, MA.

## ORDER

The financial shards of a shattered personal relationship litter the record on this appeal. The defendant, Neil E. Levine, appeals from a Superior Court judgment in the amount of $8,996.06 that entered in favor of the plaintiff, Jill Summer, after a nonjury trial for money owed. We ordered the parties to show cause why we should not decide this appeal summarily. None having been shown, we proceed to do so without any further briefing or argument.

The plaintiff and defendant entered into a personal relationship that began in 1989 and ended in 1992. They met at a party in 1989, when defendant was working as a salesman for a local manufacturer. Later, defendant told her that he had credit problems and owed a lot of money to many people. Because her credit was in good standing, plaintiff applied for and received a Citibank credit card with defendant's name on it with the understanding that defendant was to pay plaintiff for all of his charges. According to plaintiff, they also agreed that she would charge items that she purchased for defendant using other store credit cards of hers and defendant would reimburse her for these bills. In the summer of 1990, plaintiff entered into an arrangement with defendant whereby he would give her money and she would pay his debts out of her own bank account.

In January 1991, they opened a joint-checking account for this purpose. Using the joint-checking account, plaintiff managed defendant's financial affairs and living expenses. The plaintiff also deposited some of her own funds into this account.

In September 1991, the parties moved in together. The defendant was supposed to pay for all of their living expenses except food. After defendant demolished his car in an accident, plaintiff used her credit to purchase defendant a Nissan Maxima automobile for $14,895. Although defendant assumed responsibility for paying the monthly installment charges, title and registration to the vehicle remained in plaintiff's name. In late 1991, defendant's employer transferred him to Minnesota and the parties' relationship ended shortly thereafter. The defendant took the Maxima with him, however, and every so often, plaintiff received insurance-premium notices and loan statements informing her that defendant had not paid the installment payments due on the vehicle. Fearing the potential consequences of this situation, plaintiff asked defendant to return the car, but he refused. Eventually, plaintiff arranged for the car to be repossessed in Minnesota and sold to a dealership, but she had to pay off the balance due on the car to the finance company.

As a result, plaintiff filed this action against defendant in September 1992 seeking compensatory damages, including attorney fees and court costs. In response, defendant claimed that the situation was very different than the one plaintiff portrayed. He testified that he had plenty of money, but he frequently traveled on business so he had little time to manage his finances. He did admit, however, that he experienced "credit problems" during his relationship with plaintiff. The defendant also testified that his employer took away his corporate charge card, but he explained that it did so because he simply failed to fill out the company expense reports in a timely fashion. As of 1989, defendant's annual salary was approximately $70,000, and by the time he relocated to Minnesota, he earned approximately $125,000 per year. The defendant denied ever using plaintiff's credit cards or asking her to charge any purchases for him. He implied that the items bought for him using plaintiff's credit cards were gifts. When they lived together, defendant claimed that he paid for everything and that plaintiff never gave him any money. According to defendant, the parties set up the joint-checking account to allow plaintiff to pay their living expenses and debts due to his frequent traveling. He stated that he deposited his salary checks into his personal account and transferred money into the joint account so plaintiff could pay their bills. The defendant testified that he gave plaintiff money whenever she had asked for it. Furthermore, defendant claimed that they registered the Maxima in plaintiff's name to improve her credit rating. He admitted that he had agreed to pay the car payments and the automobile insurance—"all of it." Moreover, defendant asserted that he offered to purchase the car from plaintiff after the commencement of this lawsuit, but plaintiff nonetheless arranged for the repossession of the car.

As the trial justice noted before he issued his ruling, this case hinged on the parties' credibility. Accordingly, in his bench decision, the trial justice reviewed their testimony and found each party credible on some points and incredible on other matters. In other words, he did not accept the testimony of one party over the other on all issues in dispute. With respect to the charges on plaintiff's credit cards, the trial justice concluded that "there was a fair quid pro quo for those charges and there certainly was a substantial amount of money advanced by the defendant to the plaintiff." As a result, the trial justice held that plaintiff failed to establish that she purchased items for defendant's benefit based upon any agreement that he would pay her back. The trial justice, however, found that the par-

ties had a mutual agreement with respect to the purchase of the Maxima and that defendant was supposed to make all of the payments. Nonetheless, he also found that plaintiff made seven of defendant's car payments in breach of that agreement. Ultimately, the trial justice awarded plaintiff reimbursement for the car payments, insurance payments, taxes, repossession charges, and cash advances taken against a credit card, plus interest and costs.

On appeal, defendant takes issue with the notion that plaintiff is entitled to recover any money from him based on a quasi-contract theory. "Recovery in quasi-contract requires a plaintiff prove that '(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof.'" *Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 97 (R.I.1992) (quoting *Hurdis Realty, Inc. v. Town of North Providence*, 121 R.I. 275, 278, 397 A.2d 896, 897 (1979)). Although, in rendering his decision, the trial justice did not invoke this particular theory by name, it appears to us that plaintiff provided sufficient evidence for the Superior Court to find that she was entitled to some reimbursement for certain expenditures in dispute based upon a quasi-contract rationale.

The defendant also questions the propriety of various evidentiary rulings at trial, claiming that they were inappropriate. However, the defendant did not properly preserve several of these claimed errors at trial and has not adequately argued such errors in his submission to this Court. Hence, they are waived. Moreover, we give great weight to the factual findings of a trial justice sitting without a jury. We will not disturb these findings on appeal "absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *Technology Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997). Much of the evidence at trial concerned the financial arrangements between the parties and the expenses they incurred during their relationship. Despite the checks written by the defendant, the deposits into the joint account, and the evidence regarding various purchases on the plaintiff's credit-card accounts, the parties' testimony that attempted to explain these circumstances was contradictory. Thus, as the trial judge disclosed to the parties before rendering his ruling, his decision essentially was a matter of making credibility determinations regarding each of the various kinds of expenditures at issue. Because this type of fact finding is an essential function of the trial court, we are not inclined to, nor, indeed, are we capable of, revisiting such determinations on appeal absent clear proof that the trial justice overlooked or misconceived the evidence presented at trial. *See Rodriques v. Santos*, 466 A.2d 306, 309, 312 (R.I.1983).

Having examined all of the defendant's arguments on appeal, we are not persuaded that the trial justice committed such errors. Nor can we conclude that he was clearly wrong in his rulings, or that we should reverse the judgment for any other reason. Therefore, we deny and dismiss the defendant's appeal and affirm the Superior Court's judgment.

Justice LEDERBERG did not participate.