DECISION
Before the Court is the demand of plaintiff Aetna Bridge Company (plaintiff) for judgment against the defendant, Daniel T. Carrillo (defendant), in the amount of $13,000 together with punitive damages. In its four count complaint, plaintiff alleges breach of fiduciary duty, wrongful conversion, constructive fraud, and breach of implied contract. After a non-jury trial and review of post-trial memoranda, this Court renders judgment.
 Facts and Travel
In November of 1989, Alan Derouin (Derouin) was employed by plaintiff and was injured during the course of his employment. Thereafter, he retained the defendant to represent him in his claim against plaintiff. While collecting workers' compensation benefits from plaintiff, Derouin began working for Atkinson-Kiewit. While employed by Atkinson-Kiewit, Derouin was injured. Alan Derouin again retained the defendant to represent him in a workers' compensation claim, this time against Atkinson-Kiewit (Alan Derouin v. Atkinson Kiewit, WCC No. 97-1030). Thereafter, the defendant also represented Derouin in an action brought against him by plaintiff for fraudulent receipt of workers' compensation benefits in the amount of $11,611.70 (Aetna Bridge v. Derouin, C.A. No. PC 91-5473).
On September 5, 1997, the Workers' Compensation Court approved Derouin's petition for settlement of the Atkinson-Kiewit claim with Liberty Mutual in the amount of $20,000. From this award, Derouin was awarded $13,000 after payment of counsel fees to the defendant and payment of an outstanding Family Court lien. Liberty Mutual issued the check with Hanson, Curran and Parks as additional payee, per request of Aetna Bridge counsel Michael Lynch (Attorney Lynch). Ultimately, after objection by the defendant, Liberty Mutual reissued the check made payable to Derouin and his attorneys, Carrillo and Cordeiro.
The instant action concerns the $13,000 lump sum payment released to the defendant on or about September 25, 1997, which represented Derouin's award in the Atkinson-Kiewit Workers' Compensation claim. At the time of release, plaintiff's civil action, C.A. No.: PC 91-5473, was pending against Derouin.
A chronological travel of the discussions and correspondence between the defendant and Attorney Lynch follows. On September 17, 1997, defendant Carillo and Attorney Lynch agreed that the defendant would escrow the sum of $13,000 for three weeks during which time settlement discussions were to ensue. In his September 17, 1997 letter to Attorney Lynch, defendant stated:
 "This will confirm my conversation with you of September 17, 1997 wherein I indicated that the settlement proceeds from the recent workers' compensation matter would be escrowed and not disbursed pending our further settlement discussions. . . . I, therefore, will be securing for our discussion only the sum of $13,000. Lastly, this will confirm that you shall have three weeks to discuss a settlement resolution with your client." (Exhibit A.)
In reply, Attorney Lynch, in his September 19, 1997 letter to the defendant wrote:
 "This will memorialize our September 17, 1997 discussions regarding the above-referenced claim. It was agreed that the settlement check from Liberty Mutual Insurance Company shall be sent to you. You agreed to hold that check in escrow without any disbursements for three weeks, or up to and including October 8, 1997. In the interim, we shall attempt to resolve the matter presently pending in Providence County Superior Court." (Exhibit B.)
No settlement was reached by October 8, 1997. The plaintiff alleges that on October 9, 1997, defendant told Attorney Lynch that he would not disperse the subject proceeds to Derouin, pending settlement discussions between plaintiff and Derouin (Affidavit of Michael Lynch). In contrast to the writings evidencing that the funds would be held only until October 8, 1997, however, this Court has no compelling evidence before it of such alternate agreement. On October 15, 1997, defendant informed Attorney Lynch that Derouin had "against his advice" refused to settle his case with plaintiff for $13,000. In a letter of October 15, 1997, defendant stated:
 ". . . I have relayed your offer to settle this matter with Mr. Derouin in the amount of $13,000. Mr. Derouin has instructed me to refuse your offer indicating that he was disgusted at the total amount of time that we have spent attempting to work out a settlement. As you are aware, my office has attempted to negotiate a settlement on this matter since before you entered into these negotiations with your previous associate, Attorney John Hogan. My client, against my advice, has simply requested that I convey to you that you should just take him to court." (Exhibit C.)
Subsequently, on October 15, 1997, Derouin signed the following letter:
 "Pursuant to my instructions, Attorney Daniel Carrillo has delivered to me the sum of $13,000 held in escrow by him for the purposes of negotiating a settlement with Aetna Bridge Co. Since negotiations have not proceeded to my liking, I have relieved Mr. Carrillo of any futures (sic) responsibility of the $13,000. Mr. Carrillo has deducted $2,500 which represents my outstanding legal indebtedness to him." (Exhibit D.)
Accordingly, on October 15, 1997, the defendant disbursed the subject proceeds to Derouin.
In its case against Derouin, plaintiff's motion for summary judgment (C.A. No. 91-5473) was granted on March 3, 1995. Judgment was not entered until on or about December of 1997, (Exhibit E), precluding plaintiff's motion for execution until early 1998. The plaintiff's motion for pre-judgment attachment was heard on November 14, 1997. (Exhibits F and G.)
 Breach of Fiduciary Duty
In Count I of its complaint, plaintiff alleges that defendant's disbursement of the $13,000 constitutes a direct breach of his fiduciary duty to plaintiff as escrow agent of said proceeds. The defendant asserts that he owed no such fiduciary duty to plaintiff.
Whether an instrument placed with a third person constitutes an escrow agreement depends on the intention of the parties and is generally a question of fact. 28 Am. Jur.2d Escrow § 7 (2000). An escrow agreement is created when one party to a transaction delivers a sum to a third party, the escrow agent, for him or her to hold until the performance of a condition and then to deliver to the other party to the transaction. Frontier Enter. v. Anchor of Marblehead, 536 N.E.2d 352, 354 (Mass. 1989). Furthermore, the ". . . depositor must not only relinquish control of funds but give the party holding funds instructions and have the party agree to status as escrow agent to create an escrow." In re Mason, 69 B.R. 876, 883-4 (Bkrtcy. E.D. Pa. 1987) (citing In re ABW, Inc., 29 B.R. 88, 89-90) (Bankr.D.Nev. 1983)).
In the matter at Bar, the defendant agreed to "escrow" the settlement proceeds "pending our further settlement discussions with Aetna." (Exhibit A.) Attorney Lynch memorialized their understanding in his letter of September 17, 1997 in which he stated: "You agreed to hold that check in escrow without any disbursements for 3 weeks or up to and including October 8, 1997. In the interim, we shall attempt to resolve the matter presently pending in Providence Superior Court." Nevertheless, in his deposition of April 29, 1999, defendant stated: "I didn't consider myself an escrow agent." (Depo. at 45.) "Mr. Lynch didn't give the impression he wanted a formal escrow setup." (Depo. at 45.)
Article V, Rule 1.15(a) of the Rules of Professional Conduct specifically addresses an attorney's receiving and retaining the settlement funds of a client. This Rule in pertinent part provides:
 "RULE 1.15 SAFEKEEPING PROPERTY
 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of seven (7) years after termination of the representation as provided under Rule 1.16."
The Commentary to Article V, Rule 1.15 notes that "A lawyer should hold property of others with the care required of a professional fiduciary." Additionally, in In re Rossi, 737 A.2d 880, 882 (R.I. 1999), our Supreme Court recognized that there is a fiduciary duty to safeguard client funds entrusted to a [lawyer's] care.
Article V, Rule 1.15 (b) of the Professional Rules of Conduct further provides:
 "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third persons, shall promptly render a full accounting regarding such property."
Accordingly, the lawyer holding funds is required to "deliver those funds to the person or entity entitled to receive them." Matter of Mosca,686 A.2d 927, 930 (R.I. 1990).
Thus, an attorney who receives funds on behalf of his or her client "is neither an escrow agent nor an account debtor. . . ." Frontier Enter., 536 N.E.2d at 355. Instead, the lawyer holds the property of others "with the care required of a professional fiduciary." Commentary to Art. V, Rule 1.15 of the Rules of Professional Conduct; see also Matter of Hodge, 676 A.2d 1362, 1363 (R.I. 1996). An attorney "[g]enerally owes a professional obligation only to his clients; not to non-client third parties." Simon v. Wilson, 684 N.E.2d 791, 802 (Ill.App.1 Dist. 1997) (citations omitted). With respect to client funds, the fiduciary duty is to the client not to third parties. In fact, an attorney who pays settlement funds to a third party "may compromise the attorney's statutory and ethical duty to pay his or her client any money collected on the client's behalf." Frontier Enter., 536 N.E.2d at 358. An attorney "merely by virtue of his or her general retainer has no implied power to compromise and settle a client's claim or cause of action. . . ." 7 Am. Jur. 2d Attorneys at Law § 173 (1997). Further, "if a client instructs his or her attorney not to compromise the case, the authority of the attorney is limited by the instruction." Id. at § 174.
Recently, in In re Indeglia, our Supreme Court noted that when a client does not accept an attorney's recommendation to settle, the attorney cannot "usurp this ultimate decision and settle a claim without the client's consent." 765 A.2d 444, 447 (R.I. 2001). Actually, when an attorney in Indeglia accepted an offer on the part of the client, against the "express directive" of this client, he was found to violate Article V, Rule 1.2 of the Rules of Professional Conduct. Id.
Although, in the instant matter, a third party claims an interest in the funds, said funds were neither "specifically earmarked" nor belonged to plaintiff. See Frontier Enter., 536 N.E.2d at 355; see also Blue Cross v. Travaline, 398 Mass. 582, 588, 499 N.E.2d 1195, 1199 (Mass. 1986). Here there are no medical liens or attachments. On the date of disbursement of the subject funds, October 15, 1997, judgment in the then-pending matter, Derouin, C.A. No. 91-5472, had not yet entered, thus precluding any execution furthering judgment in October. Between September 19 and October 8, there was no formal correspondence between Aetna and the defendant.
An attorney's authority to conduct negotiations is distinguishable from his authority to bind a client to a settlement agreement. 90 A.L.R. 4th 327, 432 (1991) (quoting New England Educational Training Service, Inc. v. Silver Street Partnership, 148 Vt. 99, 528 A.2d 1117 (1987)). Absent a lien, court order, attachment, settlement agreement, or execution, the client settlement funds belong to the client. The attorney is obligated to disburse those funds to the client pursuant to the client's instructions and/or request. In his affidavit, plaintiff testified that the defendant verbally agreed to continue retaining the settlement proceeds in escrow pending further discussions, while the defendant denies such an oral agreement. (Affidavit of Lynch). However, in his October 15, 1997 letter to plaintiff, Carrillo wrote:
 "Please be advised that I have relayed your offer to settle this matter with Mr. Derouin in the amount of $13,000. Mr. Derouin has instructed me to refuse your offer indicating that he was disgusted at the total amount of time that we have spent attempting to work out a settlement. As you are aware, my office has attempted to negotiate a settlement on this matter since before you entered into these negotiations with your previous associate. . . . My client, against my advice, has simply requested that I convey to you that you should just take him to court."
As of October 8, the last day on which the funds would be held pending disbursement, and even thereafter on October 15, no settlement had been reached.
With respect to payments to third persons from client funds, our Supreme Court held in Matter of Hodge, 676 A.2d at 1362, that physicians who had executed valid medical liens securing payment of medical bills upon settlement of the patient's case were third persons entitled to receive such funds. Again, in In re Brown, 735 A.2d 774 (R.I. 1999), our Supreme Court found an attorney who withheld and converted to his own use funds from a client's settlement proceeds for the payment of outstanding medical bills and an accountant's claim had violated Rule 1.15(a) and (b) of the Rules of Professional Conduct. Similarly, in Blue Cross of Massachusetts, supra, an attorney was found to have no duty to pay settlement proceeds to insurers pursuant to their contractual subrogation clause although his client had previously received health insurance benefits. Like the attorney in Blue Cross, defendant owes a duty only to his client, not to his client's insurer whom he does not represent. In Blue Cross, 398 Mass. at 582, 499 N.E.2d at 1200, the second attorney was not required to serve as the "collection agent" for his client's insurance carrier, as there was no valid subrogation contract to which the attorney had been a party. Additionally, "the settlement was not allocated or earmarked to any payment made by the insurer," Id., 398 Mass. at 588, 499 N.E.2d at 1199, and the attorney had not agreed to represent the client's insurer's interest. As our Supreme Court has interpreted Rule 1.5(b) to require "the prompt delivery of funds in a lawyer's possession to parties entitled to their receipt, the defendant was required to release the subject monies to Derouin.
In Count II, plaintiff argues that the defendant's premature disbursement of the settlement proceeds constituted conversion. Conversion is defined as the `intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' Montecalvo v. Mandarelli, 682 A.2d 918, 919 (R.I. 1996) (quoting the Restatement (Second) Torts § 222(A)(1)). In the context of client funds, our Supreme Court has found conversion when in violation of 1.15(a), a lawyer serving as administrator of an estate, has failed to keep estate funds separate, instead converting some to his own use, Matter of Brousseau, 697 A.2d 1079 (R.I. 1997), or where a lawyer failed to maintain separate client accounts, instead commingling client funds earmarked for medical providers with his own business and personal funds. In re Ricci, 735 A.2d 203 (R.I. 1999). In the matter at Bar, the funds never belonged to plaintiff, were not earmarked for plaintiff, and were maintained in the client account for prompt delivery to the client, ultimately pursuant to his instruction. The plaintiff's argument for conversion accordingly fails.
Additionally, in Count III, plaintiff argues that the defendant's "premature disbursement of the settlement proceeds" constituted constructive fraud. In Rhode Island, "a breach of a fiduciary duty amounts to constructive fraud. . . ." National Credit Union Admin. Bd. v. Regine, 795 F. Supp. 59, 69 (D.R.I. 1992) (citing Matarese v. Calise,111 R.I. 551, 564, 305 A.2d 112, 119 (1973)). Accordingly, fraudulent intent does not have to be shown as "the breach of the fiduciary duty itself amounts to constructive fraud." Cahill v. Antonelli, 390 A.2d 936, 938,120 R.I. 879, 883 (1978) (citing Matarese, 111 R.I. at 564, 305 A.2d at 119). As this Court has found that defendant owed no fiduciary duty to Aetna, the issue of breach of such duty is rendered moot. Matarese,305 A.2d 112. Since defendant did not breach a fiduciary duty to the plaintiff, plaintiff's allegation of constructive fraud fails.
Finally, in Count IV of plaintiff's amended complaint, plaintiff alleges breach of implied contract. The defendant argues that plaintiff had no contract with Derouin, and Carrillo was acting as the agent of and on behalf of a disclosed principal when agreeing to hold the money until October 8, 1997. In his supporting memoranda, plaintiff cites numerous contract and quasi-contract cases without legally or factually drawing analogy to the matter at Bar.
In his post-trial memorandum, plaintiff initially notes that Eastern Motor Inns, 565 A.2d 1265 (R.I. 1989), explores the relatively "uncertain" relationship between contract and escrow. The plaintiff further opines that to recognize the validity of an escrow agreement, the Court may look to a contract or inquire into the actual circumstances and conditions surrounding the execution of a written escrow to determine the intent of the parties. The plaintiff's attempted reliance on Eastern Motor Inns is misplaced. Eastern Motor Inns involved a specifically denominated, written escrow agreement made between two contracting parties — a vendor and a purchaser — and involving the sale of land, which requires a writing. The court in Eastern Motor Inns held that a valid contract supported by $10,000 of consideration and amended by a valid escrow agreement which essentially provided the termination date for the conveyance of property pursuant to the contract existed. The Eastern Motor Inns escrow agreement was denominated as such by both parties, involved an escrow account and escrow agents who shared no fiduciary relationship, and was found by the court to be memorialized in an unambiguous writing recognizing the escrow agreement. Id. at 1271. The facts of the matter at Bar include client money held or escrowed in a lawyer's client account for approximately three weeks by a lawyer who was required to hold said funds in a fiduciary capacity pending settlement negotiations and further direction from the client. This Court finds that the client funds were escrowed until October 8, 1997 in a client account which did not transform itself into an escrow account or escrow agreement between Attorney Lynch and the defendant.
The plaintiff next argues that an implied-in-fact contract therefore exists if the express contract elements are not found in and determined from a single, express written document. The plaintiff essentially relies on UXB Sand Gravel, Inc. v. Rosenfeld Concrete Corp., 641 A.2d 75
(R.I. 1996); Rhode Island Five v. Medical Associates of Bristol County, Inc., 668 A.2d 1250 (R.I. 1996); and Marshall Contractors v. Brown University, 692 A.2d 665 (R.I. 1997) for support, again drawing no analogy to the case at Bar. In UXB, involving what constitutes a sufficient memorandum to enforce an oral agreement for the sale of land, the court found that the substantial correspondence — an unsigned purchase and sale agreements and a cover letter signed by the vendor's attorney — manifested no intent by the parties to be bound prior to execution of a formal contract. Rhode Island Five again involved letters between parties with respect to an interest in land which the court found lacked sufficient terms, did not manifest an intent by the parties to be bound, and was not cured by sworn admissions of the party to be charged. Marshall Contractors involved multiple construction documents between a contractor and a client/university that the court found reflected negotiations regarding the scope of work to be performed, not a mutual agreement regarding the terms to be incorporated in an intended formal contract or an intent to be bound prior to making said formal contract. Accordingly, the Marshall Contractors court found that the ongoing verbal and written communications between the parties constituted negotiations not a contract, either express or implied-in-fact. In the instant matter, defendant, acting as an agent on behalf of his client and disclosed principal, had no implied-in-fact contract with plaintiff. The defendant simply agreed to honor the express agreement between him and Attorney Lynch that he would hold Derouin's funds in his client account until October 8, 1997 per the instructions of his client.
Finally, plaintiff, principally relying on Summer v. Levine, 730 A.2d 33
(R.I. 1999), discusses the law of quasi-contract. The plaintiff notes that although no mutual assent is required, recovery in quasi-contract requires the plaintiff to prove that he conferred a benefit on the defendant, defendant appreciated the benefit, and it would be inequitable for the defendant to retain the benefit of same without payment of its value. However, the plaintiff does not apply the elements of quasi-contract to 11 the matter at Bar, and the Court need not and cannot "divine" from the facts before it how defendant was essentially unjustly enriched by retention of his $2500 legal fees from his representation of Derouin. Accordingly, plaintiff's claim of implied-in-fact and/or quasi-contract fails.
For the above reasons, this Court grants judgment for the defendant, including costs, and denies defendant's claim for attorney's fees. This Court also denies defendant's request for punitive damages, finding that the defendant has not met its burden of showing that plaintiff's conduct rose to the level of `willfulness, recklessness or wickedness' warranting deterrence and punishment. Mark v. Congregation Mishkon Tefiloh,745 A.2d 777, 780 (R.I. 2000).
Counsel shall present an appropriate judgment for entry after notice.